## Lorenzo L. Pulford v. Thomas M. Morton.

*Copartnership—Held not proven in this case—See opinion for review of testimony—Resulting trust—Cannot arise where title to land is placed in one party by consent of another, who furnishes the consideration for the purchase—With nothing but a verbal understanding as to how he should hold it—See How. Stat. secs. 5569–71.*

1. Upon a review of the testimony, the Court find that complainant's allegation as to the formation of a copartnership is not proven. See opinion for summary of testimony.

2. Where, in a suit for an accounting with an alleged copartner, which allegation was not sustained by the proofs, the complainant testified to the purchase of a parcel of land in which he claimed to be interested, but the title was by his consent placed in his alleged copart-

ner, with nothing but a *verbal* understanding how he should hold it; and the only act done by complainant was the payment of some small sums of money on account of expenses incident to such purchase, which, if made with authority, are recoverable at law:—

*Held*, that no *resulting* trust could arise in favor of complainant, the same being expressly negatived by How. Stat. secs. 5569, 5571; and that no *other* trust could exist without a *written* agreement.

Appeal from Wayne. (Jennison, J.) Argued May 11, 1886. Decided June 17, 1886.

Bill filed for a partnership accounting. Complainant appeals. Decree affirmed. The facts are stated in the opinion.

*Thomas Smurthwaite*, for complainant.

*Meddaugh, Driggs & Harmon*, for defendant.

CAMPBELL, C. J. Complainant filed his bill originally against defendant and his brother Robert Morton, both of Canada, to get a partnership accounting of an alleged land partnership between complainant and the present defendant, and to get conveyance and partition of complainant's interest, claimed to be one-half, in certain Detroit lots. These lots complainant insists were purchased by him for $1,056 on partnership account, for half cash and the remainder on mortgage, and the title, for convenience, placed in the name of Robert Morton, but purely for the benefit of the partners.

This purchase and arrangement are claimed to have taken place in 1883, and during the same year defendant refused to carry out the arrangements made for a sale of the land by complainant under his alleged authority as intrusted with that business, and denied complainant's interest.

The bill was filed in June, 1885. After the bill was filed Robert Morton transferred the title to defendant, and, by stipulation, was discharged from the suit, saving all rights of both parties unimpaired.

The equities are all denied, and the parties are in direct conflict. Reliance is also had on the statute of frauds, as

there were no writings between the parties. The bill was dismissed, and complainant appeals.

The case presents two principal issues; one concerning the partnership in general, and one concerning the particular lots in question. There is no evidence, and no definite claim, that the partnership was for any particular time, or that any other purchase of lands was made for it before or after.

The agreement, as set up in the bill, is that about the first of June, 1883, the parties entered into an agreement of copartnership, whereby complainant was to look up property for sale at rates promising a profit, to control it, and secure sales at reasonable profit. Each was to contribute half of the purchase price and expenses, and, on sale, to share profits and losses.

It will be observed that under this scheme there was to be no partnership fund created, or placed in anybody's hands, and that, as stated, money was only to be advanced on purchases when made. Neither was by this agreement authorized to bind the concern by purchase or by credit, unless such power is to be inferred, but it may be inferred that a power of sale was meant to be alleged in complainant. Defendant claims there was no such partnership, and raises no point on the form of the allegations. The only proof of the terms of such partnership, if one existed, is given by complainant. The admissions sworn to by others, and relied on to show its existence, throw no light on its terms, and do not indicate necessarily any interest beyond the simple purchase.

Complainant, in his direct testimony, sets out that he was a land-dealer in Detroit, and defendant an attorney in Windsor, Ontario; that, meeting defendant in Windsor, the latter proposed to complainant to go into partnership with him to buy real estate in Detroit, subdivide and sell it; that, as he represented, a Mrs. Donahue in Ottawa had $8,000 in cash, and defendant had $600; that he would put in and buy Detroit property, and they should pay Mrs. Donahue seven per cent. on her money; and, if defendant put in more than complainant, he was to be allowed seven per cent on the

excess.  There were, according to complainant, several con-
versations, but the testimony is not precise as to the closing
of any agreement.  Both were to select the property, and
complainant was to sell it.  Complainant looked for property,
and found one piece of two acres, which defendant did not
approve.  The only other piece was the land in question,
which was actually purchased, and in the purchase of which
there is some testimony that complainant was supposed to be
interested, but none that it was by virtue of any general
partnership, except his own.  Complainant does not show
any other attempts at partnership purchases.  Upon cross-
examination complainant indicated that the money of defend-
ant and of his female relative was all that was expected to
go into the concern, and that it was not contemplated he
should himself be bound to put in any particular sum, or, if
anything, not more than $500.  In this he varies from his
bill.

The vagueness of the whole arrangement, as testified to by
complainant, would of itself render it improbable that any
definite partnership arrangement was understood by both
parties to have been made.  The circumstances do not
corroborate it, and it is clearly and absolutely denied by
defendant, who claims complainant was not a partner, but
acting on some brokerage or commission agreement.  In such
a conflict we think we should not be justified in finding a
general partnership, and still less in finding that it was defi-
nite enough to act upon.  We do not think it proven.

We need not, therefore, consider whether, if made, it
could justify such a suit as the present under the statute of
frauds.

So far as the particular purchase is involved, it would not
be possible to make out any interest in it for complainant.
Any agreement made by him was by parol entirely, and no
act was done by him except the payment of some small sums
of money, for which, if made with authority, he has a legal
remedy.  Moreover, by the deliberate and voluntary act of
complainant, the title was placed in Robert Morton, with
nothing but a verbal understanding how he should hold it.

Our statute expressly declares that, under such circumstances, there can be no resulting trust. How. Stat. §§ 5569, 5571, and notes. No other trust could exist without a written agreement; and on this theory the testimony is quite as conflicting as upon the other. It is also significant that, while the claims of complainant were repudiated promptly in 1883, this suit was not brought until nearly two years later, when values had changed.

We are not satisfied that complainant has been wronged in any way. It is clear he has not been legally wronged. The decree must be affirmed, with costs.

The other Justices concurred.