WHITE *v.* McKENZIE.

1. APPEAL AND ERROR—DIRECTED VERDICT.

Upon appeal from a directed verdict, plaintiff is entitled to have his testimony viewed most favorably to himself, but he is not entitled to a construction of it opposed to its reasonable significance.

2. TRUSTS—PAROL CONTRACT—RESULTING TRUST—EXPRESS TRUST —STATUTE OF FRAUDS.

Where defendant orally agreed with plaintiff and an associate to furnish the purchase price of certain real estate, taking title in defendant's name, and all three were to make an effort to sell at a profit, which was to be divided equally among them after allowing defendant $200 for the use of his money, there was no resulting trust, and no other trust could exist without a written agreement.

Error to Wayne; Hosmer, J. Submitted June 16, 1916. (Docket No. 144.) Decided September 26, 1916.

Assumpsit by William White against William McKenzie for money had and received. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*Thomas A. Conlon,* for appellant.

*Watson, Safford & Shepherd,* for appellee.

OSTRANDER, J. Plaintiff rested his case, and the court directed a verdict for defendant. The court was of opinion that the testimony for plaintiff tended to prove a parol contract, or agreement, for an interest in lands—a contract not enforceable unless in writing —and that in any event the suit was prematurely instituted.

The declaration, which concludes with the common counts in assumpsit, contains a special count. In the

special count, as amended, plaintiff alleges, in substance and effect, that he and another found for sale certain real estate in the city of Detroit which they brought to the attention of defendant, who agreed with plaintiff and his associate to purchase the property from the owner for $8,800. The property was incumbered for $5,000. A commission of $132 was received from the owner for making the sale, and was divided equally between plaintiff, his associate, and defendant. Defendant had and furnished $3,800 of the purchase money, was to have $200 for the use of his money, the title was taken in his (defendant's) name, and plaintiff, his associate, and defendant were to each make an effort to sell the property for more than $9,000, dividing equally between them any sum more than $9,000 received for the property, and dividing the rents received therefrom pending the sale. It is alleged that defendant sold the property for $10,500, and collected in rents therefrom $900. In his bill of particulars plaintiff claims a one-third interest in the profits made on the sale, $500, one-third rents, as per agreement, $300, for advertising, $15, interest on $500 from the time defendant sold the property, and interest upon $300 rent collected by defendant. The plea is the general issue. When the motion for a directed verdict was made, one ground of the motion being that the contract proven was not the contract alleged in the declaration, counsel for plaintiff said: "We are proceeding entirely on the common counts in this declaration."

Plaintiff upon this appeal, and upon the merits—I think there is no occasion to discuss any point save the one that his agreement is not enforceable—is entitled to have his testimony viewed most favorably to himself. He is not entitled to a construction of it opposed to its reasonable significance. He described upon direct and cross-examination what the parties

said and what they did.   Without setting out the testimony, its substance is that plaintiff and his associate learned that certain productive property was for sale. At the price asked for it they believed it could be resold, in a short time, at a profit, and that the accruing rents would carry the property after the original payment of purchase money was made.   There was also a certainty, at least a chance, that if they could find a buyer they could get a commission from the owner if a sale was made.   They took the matter up with defendant, talked with him, and with him examined the property.   The owner's price was $9,000 and the property was mortgaged for $5,000.   The owner agreed to take and did take $8,800 for the property, deeding it to defendant.   Why defendant should purchase the property at the owner's price and agree to divide the profits, if it was sold at a profit, with plaintiff and his associate, no limit of time of sale or price being fixed, is not well explained, unless they purchased it on joint account, each, as between themselves, having an interest in the property, and were to later agree as to the length of time it should be held and the price at which it should be resold.   The mortgage plaintiff learned would be due in the fall or winter following the purchase.   The deed was made about July 1, 1913. The rents, if it was all of it continuously rented at the prices fixed by the owner, were about $150 a month. The mortgage debt drew interest, and the property was, of course, liable to taxation.   It might never be sold for more than it cost.   Plaintiff at various times and in varying language testified to the agreement which was made:

"I will take $200 for the use of my money, and we will divide all the profits above $9,000 between the three of us," is one statement.

"He said we will all try to sell the property, and when it is sold we will divide the profits," is another statement.

"The agreement was that it did not make any difference whether the property was sold the next day or how long it might be before it was sold; that Mr. McKenzie was to have $200 for the use of his $3,800 during the time that it was tied up in this property. * * *

"*Q.* What was said as to how the rent would carry the property along?

"*A.* Simply that we would divide the profits on the property—the income and the outgo at the time the deal was completed.

"*Q.* I want to know what was said between you men with respect to the rent that that property would bring, carrying the property along.

"*A.* Why simply that the property had that rental on it, and that we would sell it, and when we would sell it we would divide the profits on it.

"*Q.* Do you mean to say that it was included in your agreement that you should have one-third of the rent the property brought in, Mr. Welch one-third. and Mr. McKenzie one-third?

"*A.* That is the understanding.

"*Q.* That was the agreement?

"*A.* Yes, sir."

This testimony, given by plaintiff, is somewhat varied by the following:

"Mr. McKenzie said that he would make the proposition of $8,800 for that property. He would take $200 for the use of his money, and that we would sell it for all we could above $9,000 and divide the profits on the deal.

"*Q.* And that was all that was said?

"*A.* That was the proposition *in toto;* Mr. McKenzie was to pay the taxes.

"*Q.* What was said about that?

"*A.* Why he would take care of those things when they came along.

"*Q.* Did he say that?

"*A.* I believe so; I won't swear to that absolutely. * * * I don't recall any conversation as to who should pay the interest on the outstanding mortgage of $5,000. There was nothing said at all as to who should pay the upkeep of the property."

Plaintiff's associate, Mr. Welch, gave testimony to the effect that he took defendant to look at the property which he was trying to sell for the owner, and which could be purchased for $9,000.

"McKenzie says we would take the property for $9,000. We would divide any profits over $9,000, and I ought to have the $200 for the use of my money.

"Q. What money?

"A. Well, whatever he would have to put in.

"Q. How much would he have to put in to swing the deal?

"A. Well, there was a mortgage of $5,000 on the property, and that would necessitate the $3,800, and so, of course, he would have to take care of that; whatever arrangements he could make they were satisfactory to us; we did not care.

"Q. And then he said that all over and above $9,000 that the property was disposed of or sold for, what would be done with that?

"A. And when it was sold we were to share thirds in the profits above the $9,000.   *   *   *

"Q. As between you three men it was a joint proposition?

"A. To share equally in the profits made, except that Mr. McKenzie was to have the $200 for the use of his money.

"Q. That is correct, is it?

"A. We were to share in the profits.

"Q. Just answer that 'Yes' or 'No,' please; that is the only answer that question calls for.

"A. Oh, I suppose that is so; yes, sir.

"Q. That was your understanding of it at least?

"A. Yes, sir."

There can be no reasonable doubt, I think, that the plaintiff's case, vague as it is, amounts to no more than this, that by voluntary agreement title to the land was placed in defendant, with a parol understanding how he should hold it. He was to hold it for sale at a profit for joint account. The rentals to accrue from it were to be used at least to maintain it. An ac-

counting for rents and compelling defendant to sell at a reasonable profit within a reasonable time were rights attaching to the agreement testified to. There was and could be no resulting trust. No other trust could exist without a written agreement. *Pulford* v. *Morton*, 62 Mich. 25 (28 N. W. 716) ; *Tuttle* v. *Bristol*, 142 Mich. 148 (105 N. W. 145) ; *Nester* v. *Sullivan*, 147 Mich. 493 (111 N. W. 85, 1033, 9 L. R. A. (N. S.) 1106).

The judgment is affirmed, with costs to appellee.

STONE, C. J., and KUHN, BIRD, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred.