MORRISON *v.* MEISTER.

1. PARTNERSHIP—FRAUDS, STATUTE OF—AGREEMENT TO BUY AND
   SELL LAND.
     A partnership agreement to buy and sell lands generally,
     falls within the statute of frauds, and this is likewise true
     when but one transaction is involved and where it may
     be treated as a joint adventure only.

2. SAME—SHARING PROFITS—EVIDENCE.
     Sharing in profits may be evidence to be considered where
     the question of a partnership is involved, but it is not
     conclusive.

3. SAME—RIGHTS OF THIRD PARTIES—INTENT.
     While parties may so make their engagements as to consti-
     tute themselves partners, as matter of law, where rights
     of third persons who have dealt in reliance on a holding
     out are not involved, the intention of the parties is of
     prime importance.

4. SPECIFIC PERFORMANCE—LAND CONTRACTS — PARTNERSHIP — IN-
   TENTION.
     . An oral agreement between a lot purchaser and a contractor
     that the title to the lot should be taken by them as tenants
     in common, that the contractor should erect a dwelling
     thereon, after which the premises should be sold, and,
     after reimbursing each the moneys so advanced, the profits
     should be divided equally, but with no intention on their
     part of forming a partnership, did not constitute a partner-
     ship so that a land contract to sell said premises, signed by
     the contractor only, without the knowledge or consent of
     the lot owner, and without any intention of binding him
     as a partner, was not specifically enforceable as against
     him.

Appeal from Wayne; Smith (Guy E.), J., presid-
ing. Submitted October 12, 1920. (Docket No. 83.)
Decided December 21, 1920.

Bill by Mary S. Morrison and another against Saul

On effect of agreement to share profits to create partnership,
see note in 18 L. R. A. (N. S.) 963.
   On validity of parol partnership to deal in land, see notes in
16 L. R. A. 745; 4 L. R. A. (N. S.) 427; 33 L. R. A. (N. S.)
883; L. R. A. 1915A, 521.

H. Meister and another for the specific performance
of a land contract. From a decree for plaintiffs, de-
fendant Meister appeals. Reversed and bill dismissed
as to appellant.

*Rood & Visscher,* for plaintiffs.

*Thomas Thompson,* for appellant.

FELLOWS, J. Defendant Meister had purchased a
lot on Quincy avenue, Detroit, on contract but had
not paid the purchase price in full. Unimproved
property was not as salable as that which was im-
proved. Defendant Satovsky was engaged with his
father in building houses. A verbal arrangement was
entered into between defendants whereby Meister was
to pay up the balance due on his contract and Satovsky
was to erect a dwelling house on the lot. Upon the
sale of the premises Satovsky was to have his money
first, then Meister was to have his money, and the
profits were to be equally divided. The title was
taken by defendants as tenants in common. There is
some testimony that Meister furnished some money
besides the lot, but how much does not appear, nor is it
important in this litigation. It fairly appears that
defendant Satovsky was in need of money in his build-
ing operations and was anxious to sell the premises
even before completion. Meister, on the other hand,
seems to have opposed this move, as he wanted to
know the full cost of the completed building before
making any sale. Without the knowledge of Meister,
Satovsky listed the property for sale with a firm of
real estate brokers at $13,500. This firm negotiated
a sale to plaintiffs. On June 28, 1919, plaintiffs and
defendant Satovsky entered into a written contract
of sale and $500 was paid to him on the purchase price.
Meister did not sign the contract and did not know
of it until a few days later when he declined to sign

or be bound by it. In August plaintiffs tendered $3,000, balance of the down payment, and a land contract to defendant Meister to sign. This being refused this suit was instituted for the specific performance of the contract of June 18th.

We may lay aside those cases involving partnership by estoppel, partnerships by holding out, as neither of the plaintiffs claim that they relied upon any holding out of an ostensible partnership. Mr. Morrison was not sworn as a witness and Mrs. Morrison, who was sworn, does not claim that she signed the contract with defendant Satovsky in reliance upon his apparent authority as a partner to bind both defendants. She in fact testifies that she did not know anything about a partnership until in August, which was some weeks after the contract was signed. Her testimony satisfies us that she supposed that Satovsky was the owner of the entire premises and dealt with him as such. While there is evidence, not exactly clear as to what it contained or how long it was up, that a "For Sale" banner and sign was upon the premises, no testimony is found in the case showing, or tending to show, any reliance upon a partnership by holding out. When the original bill was filed in August no claim was made that defendants were partners, and it was not until in October when an amended bill was filed that such claim was made.

A partnership agreement to buy and sell land generally falls within the statute of frauds. *Nester* v. *Sullivan,* 147 Mich. 493. And this is likewise true when but one transaction is involved and where it may be treated as a joint adventure only. *Tuttle* v. *Bristol,* 142 Mich. 148. But we are satisfied that no partnership in fact existed between these defendants. Sharing in profits may be evidence to be considered where the question of a partnership is involved, but it is not conclusive. Parties may so make their engage-

ments as to constitute themselves partners, as matter
of law. But where rights of third persons who have
dealt in reliance on a holding out are not involved, the
intention of the parties is of prime importance. In
*Beecher* v. *Bush*, 45 Mich. 188 (40 Am. Rep. 465), Mr.
Justice COOLEY, speaking for the court, said:

"If parties intend no partnership the courts should
give effect to their intent, unless somebody has been
deceived by their acting or assuming to act as part-
ners; and any such case must stand upon its peculiar
facts, and upon special equities."

And Mr. Justice HOOKER in *Canton Bridge Co.* v.
*City of Eaton Rapids*, 107 Mich. 613, said:

"To determine whether persons are in fact part-
ners, we must look at their intention, and this is de-
ducible from their declaration as to their intention,
and the agreements that they make regarding the sub-
ject-matter; and, where the contract under which the
business engagement is made contains the express or
implied disavowal of an intention to assume the part-
nership relation, no partnership will be found to exist,
unless such declaration is so at variance and so incon-
sistent with their engagement as to be irreconcilable.
If the actual engagements are incompatible with the
expression of intention, the latter must yield to the
former; but, where they can be reconciled, the latter
must govern."

The record is convincing that there was no inten-
tion on the part of the defendants to form a partner-
ship. Very few of the *indicia* of partnerships were
present and most of them were absent. This was the
only property they had a common interest in; there
was no firm name, no firm funds, no firm accounts, no
firm letterheads, no firm bank account, no commingling
of funds or property, no certificate of partnership
filed, no agreement as to losses, no time fixed when
it would expire. In the recent case of *Mullholland* v.
*Patch*, 205 Mich. 490, Chief Justice BIRD, speaking for
the court, said:

"It is not claimed that the copartnership was given a name, or that it had any funds with which to purchase the options, or that there was any arrangement between the parties that any one of them should advance funds for that purpose. There appeared to be no agreement with reference to the losses, if any were incurred. Nothing appears as to the term for which it should continue. It had no place of business and no books were kept, and the only option taken was not taken in the name of a partnership but was taken in the name of defendant and paid for by him. Very few of the *indicia* usually surrounding the relation of copartners were present. We think the testimony relied upon to establish the agreement was too meager and indefinite to accomplish its purpose."

See, also, *Bush* v. *Haire*, 197 Mich. 85; *Fletcher* v. *Fletcher*, 197 Mich. 68; *Pulford* v. *Morton*, 62 Mich. 25; *Wells* v. *Babcock*, 56 Mich. 276; *Miller* v. *Casey*, 176 Mich. 221; Act No. 72, Pub Acts 1917, § 7, and sub. 2 (uniform partnership act).

Defendant Satovsky did not assume to represent defendant Meister in making the contract with plaintiffs. He signed the contract in his individual name. Whatever remedy plaintiffs may have against him must be determined in the future. Plaintiffs are not entitled as against defendant Meister to a decree for the specific performance of a contract to convey land which he never signed and which was not signed by one authorized by him so to do either expressly or impliedly, orally or in writing.

It follows from what we have said that the decree must be reversed and the bill dismissed as to defendant Meister. The case may be remanded to the trial court for such proceedings as to defendant Satovsky as plaintiffs may be advised are appropriate. Defendant Meister will recover costs of both courts.

MOORE, C. J., and STEERE, BROOKE, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.