GLEICHMAN *v.* WAYNE CIRCUIT JUDGE.

1. CONTRACTS—CONSTRUCTION—LITERARY PROPERTY.
   Whether the proprietor of a moving picture theatre was entitled to have his choice of pictures released by motion picture distributor under a contract between them covering a period of five years, three of which had already run, *held*, a question of fact to be supplied by proofs, the contract on its face giving no such right.

2. MANDAMUS — INJUNCTION — SUPREME COURT WILL NOT INTERFERE WITH DISCRETION OF COURT BELOW WHERE QUESTION OF FACT INVOLVED.
   Although the *prima facie* case made by plaintiff in his bill of complaint and affidavits would have justified the court below in continuing a temporary injunction pending the hearing of the suit, the Supreme Court will not, on mandamus, compel the court below to vacate an order dissolving said injunction where there is involved the uncertain element of a question of fact.

Mandamus by Phil Gleichman to compel Theodore J. Richter, circuit judge of Wayne county, to vacate an order dissolving a temporary injunction. Submitted October 17, 1922. (Calendar No. 30,519.) Writ denied December 29, 1922.

*Robert M. Brownson,* for plaintiff.

*Stevenson, Carpenter, Butzel & Backus* and *Alfred J. Murphy,* for defendant.

BIRD, J.   Plaintiff applies for a writ of mandamus to compel the defendant, as circuit judge, to set aside an order made by him dissolving a temporary injunction in the chancery case of Phil Gleichman *v.* Famous Players-Lasky Corporation, *et al.,* pending in the Wayne circuit court.

A brief history of the facts involved in that case is that in 1919, and for some time prior thereto, plaintiff Gleichman and Harry I. Garson were operating the Broadway-Strand theatre, which exhibited moving pictures in the city of Detroit. Defendant, Famous Players-Lasky Corporation, was engaged in the business of furnishing or leasing motion pictures for exhibition. Overtures were made in the summer of 1919 to Gleichman and Garson by the Famous Players-Lasky Corporation to use their motion pictures exclusively in the Broadway-Strand theatre. Gleichman was friendly to the proposition but Garson objected to the exclusive feature of the proposition. In order to work out the proposition the Famous Players-Lasky Corporation furnished Gleichman with $12,500 with which to buy Garson's interest in the theatre. After this was accomplished Gleichman entered into a contract with the Famous Players-Lasky Corporation, which was to extend over a period of 5 years. This contract provided that the Paramount and other pictures of the Famous Players-Lasky Corporation released during those years should be exhibited by plaintiff in the Broadway-Strand theatre and no others. The important paragraph of this contract follows:

"*Third.* The exhibitor (plaintiff) hereby agrees to contract with the distributor (Famous Players-Lasky Corporation) for and to exclusively exhibit at the said theatre for the period of five (5) years from the 28th day of September, 1919, motion picture productions released by the distributor, and to fill the entire time of the said theatre with bookings of the product of the said distributor, the said contract and bookings for the first year of said term being covered by agreement of even date herewith, and the said contract and bookings for subsequent years of said term to be made upon the basis of the standard practice for such years established by the distributor, and upon terms and conditions similar to those applied by the distributor in theatres of like seating capacity, location and stand-

ing. And the distributor hereby agrees to contract with the exhibitor from year to year for the exhibition of motion picture productions released by the distributor for the said period of five (5) years from the 28th day of September, 1919, upon terms and conditions similar to those applied by the distributor during such years to theatres of like seating capacity, location and standing."

In pursuance of the terms of this contract a contract or schedule was made for the theatrical season of 1919-1920, specifying in detail how the gross receipts should be disposed of, and containing many other details affecting the operation of the theatre.

In September, 1920, another schedule for the season of 1920-1921 was agreed to, which was much like the preceding one. In addition it contained the following provision as to how the pictures should be selected:

"*First.* The distributor agrees to and does hereby grant to the exhibitor the license to exhibit one copy of each motion picture production to be released by it, and which it shall designate as a proper production for exhibition in the Broadway-Strand theatre during the year beginning September 1, 1920, and ending August 31, 1921, and the exhibitor agrees to pay for such license so as to exhibit each of the said motion picture productions as hereinafter provided, it being understood and agreed, however, that the pictures designated to be played in the Broadway-Strand theatre shall be mutually agreed upon and chosen from the then available Famous Players-Lasky Corporation pictures not yet shown in Detroit."

In September, 1921, the third schedule or contract for the season of 1921-1922 was agreed to. This was similar in character to the preceding one, but differed somewhat in detail. It also provided that the pictures should be mutually selected by the parties. Under the contract and these three schedules the parties worked harmoniously together during the first three years of the contract. In September, 1922, the Famous

Players-Lasky Corporation refused to make a contract or schedule applying to the season of 1922-1923, assigning various reasons therefor, and also refused to furnish Gleichman his choice of the pictures released, as it is claimed had been theretofore done. Being unable to adjust their differences by negotiation Gleichman filed his bill of complaint setting up all the facts and praying for an injunction to restrain the Famous Players-Lasky Corporation from letting or leasing its pictures to other theatre managers in the city of Detroit. It is asserted by Gleichman that the Famous Players-Lasky Corporation had secured a better contract from the Kunskey theatres, and for that reason it was attempting to avoid its contract with him. It is also the claim of Gleichman that he was to have the first choice of the Paramount pictures which were released by the Famous Players-Lasky Corporation, and that both parties so understood it, and that during the three years of the existence of the contract he did have his first choice of those pictures which were released. It is shown that the Paramount pictures are among the best in the market, that they are of great value to plaintiff and that the loss thereof will result in irreparable damage to him.

The Famous Players-Lasky Corporation denies that Gleichman in and by the terms of the contract is entitled to his first choice of the Paramount pictures, but charge that the pictures were to be mutually selected by the parties. It is further charged that Gleichman is in arrears in his payments and that the contract is too vague and indefinite to be enforced.

The chancellor, upon the hearing, in response to the order to show cause, was of the opinion that the contract upon its face did not give to Gleichman the first choice of the Paramount pictures released by the Famous Players-Lasky Corporation. He appears to have paid little, or no, attention to Gleichman's con-

tention that the practical construction given to the contract by the parties themselves was that Gleichman should have his first choice of the pictures, although this contention was supported by proof, nor does he appear to have given any consideration to the following excerpt from the contract:

"The said contract and bookings for the first year of said term being covered by agreement of even date herewith, and the said contracts and bookings for subsequent years of said term to be made upon the basis of the standard practice for such years established by the distributor, and upon terms and conditions similar to those applied by the distributor in theatres of like seating capacity, location and standing."

Upon an examination of the contract and schedules we are of the opinion that the chancellor is right in his conclusion that the contract on its face does not establish Gleichman's right to have his first choice of the Paramount pictures. There is one element of the contract which would have to be established by proofs before it could be said that Gleichman's contention was established. Gleichman would have to make proof of the practical construction which the parties had given to the contract, and further proof would have to be made of the terms and conditions which had been established by the distributor in other theatres of like character. We, therefore, have a contract asserted, one element of which must be supplied by proofs. This, of course, involves a question of fact where the contentions are denied, as they are in this case. In cases of this character where questions of fact have been involved the court has been very loth to interfere with the discretion of the trial court. We have said that where the question before the trial court was one of law merely, we would review it. The following cases are illustrations of that rule: *Dodge* v. *Van Buren Circuit Judge,* 118 Mich. 189; *Titus* v.

*Chippewa Circuit Judge,* 168 Mich. 507; *Baltic Mining Co.* v. *Houghton Circuit Judge,* 177 Mich. 632; *Ionia, etc., Ins. Co.* v. *Ionia Circuit Judge,* 100 Mich. 606 (32 L. R. A. 481); *Bogert* v. *Jackson Circuit Judge,* 118 Mich. 457.

While we are of the opinion that the *prima facie* case made by plaintiff in his bill of complaint and affidavits would have justified the trial court in maintaining the *status quo* (22 Cyc. p. 751), it does not occur to us how plaintiff would get the benefit of the pictures even if the *status quo* were maintained. An indirect benefit only would result if rival theatres were prohibited from exhibiting them. If this court were to reinstate the *status quo* we would be obliged to exercise our discretion on the questions of fact involved in the uncertain element of the contract. To do this we would be obliged to depart from the rule which has been heretofore observed. For this reason we must deny the writ.

The writ is denied.

FELLOWS, C. J., and WIEST, McDONALD, CLARK, SHARPE, and STEERE, JJ., concurred. MOORE, J., did not sit.