GLEICHMAN v. FAMOUS PLAYERS-LASKY CORPORATION.

1. PARTNERSHIP — JOINT ADVENTURES — GENERALLY THE TEST IS INTENT OF PARTIES.
     Generally, the test of a partnership as between the parties to a joint adventure is their intent to become partners.

2. JOINT ADVENTURES—DEFINITION.
     Generally, a joint adventure is an association of two or

¹Partnership, 30 Cyc. p. 360; ²Joint Adventure, 33 C. J. §§ 1, 2; 48 A. L. R. 1055.

more persons to carry out a single business enterprise for profit.

3. PARTNERSHIP—EVIDENCE—SHARING OF PROFITS MAY BE EVIDENCE OF PARTNERSHIP BUT IS NOT CONCLUSIVE.

Sharing in profits may be evidence to be considered where the question of a partnership is involved, but it is not conclusive.

4. SAME—JOINT ADVENTURES—WHERE NO SHARING OF LOSSES NO PARTNERSHIP EXISTED ALTHOUGH PROFITS DIVIDED IN PAYMENT OF RENTAL.

Contracts between a theater owner and a motion picture producer for the exclusive exhibit of the latter's pictures in the former's theater did not constitute them partners or joint adventurers, where the only obligations incurred thereunder were personal to each other, and there was no joint obligation, no service to be rendered by them jointly and no sharing of losses, although there was a provision for payment for rental of the films by a division of theater profits on a percentage basis, after certain operating expenses had been deducted.

5. EQUITY—PARTNERSHIP—ADEQUATE REMEDY AT LAW.

A suit for an injunction and for an accounting, on the theory that the parties were partners or joint adventurers was properly dismissed where no such relations existed, and plaintiff's remedy, if any, is an action at law for damages for breach of contract.

6. JUDGMENT — RES ADJUDICATA — DECISION NOT CONTROLLING ON QUESTION NOT CONSIDERED.

Where, on appeal in a suit for an injunction and an accounting on the theory that certain contracts between the parties constituted them partners or joint adventurers, the Supreme Court considered only the question of the dissolution of a temporary injunction, and did not determine the relations of the parties under the contracts, it cannot be said that the decision on said appeal laid down the law of the case.

Appeal from Wayne; Lamb (Fred S.), J., presiding.   Submitted October 18, 1927.   (Docket No. 3.) Decided January 3, 1928.

[3]Partnership, 30 Cyc. p. 369; [4]Joint Adventure, 33 C. J. §§ 17, 96; Partnership, 30 Cyc. p. 413; [5]Equity, 21 C. J. § 35; Injunctions, 32 C. J. §§ 37-38, 40; [6]Appeal and Error, 4 C. J. § 3081.

Bill by Phil Gleichman against the Famous Players-Lasky Corporation and others for an injunction and an accounting. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*Robert M. Brownson* and *Groesbeck, Sempliner, Kelly & Baillie*, for plaintiff.

*Stevenson, Butzel, Eaman & Long* and *Frank D. Eaman* (*John C. Bills*, of counsel), for defendants.

SHARPE, J. In the summer of 1919 the plaintiff and one Harry Garson were engaged in conducting a motion picture theater in the city of Detroit, known as the Broadway Strand. The Famous Players-Lasky Corporation (a New York corporation, hereafter called the defendant) was then engaged in producing and distributing high grade films for such pictures. It desired to arrange for the exclusive exhibit of its pictures in one of the Detroit theaters for a term of years, and to that end entered into negotiations with plaintiff and Garson. Garson was unwilling to enter into such a contract, and an arrangement was made by which plaintiff purchased the interest of Garson in the leasehold and theater for the sum of $12,000. This money was loaned by defendant to plaintiff, a demand note being given therefor. A contract was then executed between plaintiff and defendant (Exhibit A) providing for the exhibition of such pictures for the term of five years on terms and conditions to be stated in what is called a "booking contract," to be entered into each year, the first of which (Exhibit B) was executed on the same day, to be effective from September 28, 1919, to September 28, 1920. Booking contracts, having the same purpose in view but differing in their terms, were entered into at the expiration of the first and second years thereafter (Exhibits C and D). The parties could not agree on the terms of a contract for the following year. Defendant was

insistent that a sum then due it for film rentals should be at once paid. Apprehending, as plaintiff claims, that defendant did not intend to enter into a new booking contract for the following year, he sought to make payment conditional thereon. Negotiations were kept up for some time, but were ended on July 19, 1922, by a letter written by defendant, in which it stated, "We consider our business relations at an end." Two days later, plaintiff filed his bill of complaint herein. In it he avers that the contracts "Exhibit A" and "Exhibit D" are still in force and his readiness to perform the same. The relief prayed for in the bill as filed was for an order restraining the defendant "from entering into any contract or carrying out any agreement or exhibiting or attempting to exhibit or advertise the exhibition of any photo plays, films, or motion pictures in any theater in the city of Detroit, other than the Broadway Strand Theatre," in violation of said contracts. At the opening of the trial, nearly four years thereafter, he asked and obtained leave to amend the prayer of the bill to pray for an accounting. On the filing of the bill a temporary restraining order was issued, but later, on defendant's motion, was dissolved. An application to this court to reinstate it was denied. *Gleichman* v. *Wayne Circuit Judge*, 221 Mich. 355. After a hearing on the merits, the trial court entered a decree dismissing the bill of complaint. Plaintiff appeals.

The rights and obligations of these parties must be determined from a consideration of the contract first entered into (Exhibit A) and that last entered into (Exhibit D). There had been full performance under Exhibits B and C. In Exhibit A the plaintiff agreed:

(1) To repay to defendant in stated installments the money loaned him.

(2) To contract with defendant for and to ex-

clusively exhibit its motion picture productions in the Broadway Strand Theatre for the period of five years, on terms to be agreed upon in booking contracts to be entered into each year.

The defendant agreed:

(1) To accept the payments in installments provided plaintiff kept his agreement. In case of default, it might declare the entire sum due and payable.

(2) To contract with plaintiff for the exhibition of such productions as above stated and to fill the entire time of the theater therewith.

In Exhibit D the plaintiff agreed:

(1) To exhibit the productions designated by and furnished him by the defendant as stated therein.

(2) To pay as a license fee for the right to exhibit such pictures a guaranteed minimum of $1,500 per week and in addition thereto a sum equal to 50 per cent. of the amount of the gross admission receipts after deducting therefrom the actual operating expenses (not including the guaranteed license fee), plus $2,100 for the first two weeks of such exhibition and 50 per cent. of the weekly receipts after deducting the actual operating expenses for each week thereafter.

(3) To pay the $1,500 minimum license fee 7 days prior to the week for which the production was licensed and the balance thereof on or before Tuesday of the week following the production.

(4) To exhibit such productions only at the Broadway Strand Theatre and on the days designated by the distributor.

(5) To charge a minimum admission fee of 20 cents.

(6) To use only the advertising matter furnished by the defendant and to return the same and all reels, containers, etc., in good condition, paying for any damage thereto at a price agreed upon.

(7) Not to assign or transfer the license granted.

(8) To serve written notice on defendant of any claim for damages for nonperformance, and not to begin action therefor within 60 days from the date of the act complained of, and that no action should be maintained unless commenced within 60 days thereafter.

The defendant agreed:

(1) To grant a license to plaintiff to exhibit its productions.

(2) To give plaintiff at least 10 days' notice of the dates when each of such productions would be furnished to him for exhibition.

(3) To pay to the plaintiff a stipulated sum on failure to deliver a production as provided for therein.

It is plaintiff's claim that he and the defendant were engaged in a joint adventure, and that, although he would now gain nothing by a decree granting injunctive relief, he is entitled to an accounting. It is defendant's claim that their relationship was that of licensor and licensee.

As the rights of third persons are not here involved, "the intention of the parties is of prime importance." *Morrison* v. *Meister*, 212 Mich. 516, 619.

"The usual test of a partnership as between the parties to a joint adventure is their intent to become partners."   15 R. C. L. p. 501.

This intent must be gathered from the four corners of the instruments executed by them and the manner in which they conducted the business under them. A joint adventure has been defined by this court to be "an association of two or more persons to carry out a single business enterprise for profit."   *Fletcher* v. *Fletcher*, 206 Mich. 153, 167.   It was further said in that case: "It is true that there are some exceptions to this statement, but in the main it will be found to be true."   In *Keiswetter* v. *Rubenstein*, 235 Mich. 36, 45, it is said:

"While, under the present state of the law, courts do not treat a joint adventure as in all respects identical with a partnership, the contractual relations of the parties and nature of their association are so similar and closely akin to a partnership that it is commonly held their rights and liabilities are to be tested by the same rules that govern partnerships."

Some of the provisions of our uniform partnership act (Act No. 72, Pub. Acts 1917 [Comp. Laws Supp. 1922, § 7966]) may well be considered:

"A partnership is an association of two or more persons to carry on as co-owners a business for profit." § 6, subd. 1.

"The sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived." § 7, subd. 3.

"Where, by any wrongful act or omission of any partner acting in the ordinary course of the business or the partnership, or with the authority of his co-partners, loss or injury is caused to any person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefor to the same extent as the partner so acting or omitting to act." § 13.

"All partners have equal rights in the management and conduct of the partnership business." § 18, subd. e.

"A partner is co-owner with his partners of specific partnership property holding as a tenant in partnership." § 25, subd. 1.

If we apply the law as thus stated, the absence of the *indicia* of partnerships is apparent. As was said by Mr. Justice FELLOWS in *Morrison* v. *Meister*, *supra:*

"There was no firm name, no firm funds, no firm accounts, no firm letterheads, no firm bank account, no commingling of funds or property, no certificate of partnership filed, no agreement as to losses."

It is urged that, notwithstanding the lack of these, the relation of joint adventurers may exist. This relation is a creature of the law. It is not referred to in any statute. We have not been able to find any definition of it or state of facts in any reported case

which may be said to apply to those here presented. Counsel stress the fact that the earnings were to be divided. In *Beecher* v. *Bush,* 45 Mich. 188 (40 Am. Rep. 465), it was held (syllabus) :

"An arrangement by which one man 'hires the use' of another's building from day to day and opens and keeps it as a hotel, paying the owner daily a sum 'equal to one-third of the gross receipts and gross earnings,' does not of itself constitute them partners."

The effect of an agreement whereby the profits of a business are to be divided in its relation to the rights and obligations of the parties is discussed at length in this case by Mr. Justice COOLEY, and may be read with profit.   We quote therefrom:

"Except when one allows the public or individual dealers to be deceived by the appearances of partnership when none exists, he is never to be charged as a partner unless by contract and with intent he had formed a relation in which the elements of partnership are to be found.   And what are these?   At the very least the following :   Community of interest in some lawful commerce or business, for the conduct of which the parties are mutually principals of and agents for each other, with general powers within the scope of the business, which powers however by agreement between the parties themselves may be restricted at option, to the extent even of making one the sole agent of the others and of the business.   *   *   *

"Beecher furnished the use of the hotel and a clerk to supervise the accounts, and received for so doing one-third the gross returns.   It was not understood that he was to intermeddle in any way with the conduct of the business so long as Williams adhered to the terms of his contract.   If the business was managed badly Beecher might be a loser, but how could he help himself?   He had reserved no right to correct the mistakes of Williams, supply his deficiencies or overrule his judgments.   *   *   *

"We have not overlooked any one of the circumstances which on the argument were pointed out as peculiar to this case.   None of them is inconsistent

with the intent that Beecher was to be paid for the use of his building and furniture merely."

In *Thayer* v. *Augustine,* 55 Mich. 187 (54 Am. Rep. 361), the plaintiff rented a building to defendant for a saloon, the rent to be one-half of the profits of the business, payable weekly. He brought suit therefor. Defendant claimed they were partners. This court said:

"The parties had no mutual interest in the capital invested,—the capital belonged exclusively to the defendant, and there was no stipulation for mutual loss. It is true the profits, if any, were to be divided; not however as proceeds of a joint venture by the parties, but to ascertain what amount of the proceeds of the individual enterprise carried on by the defendant would indicate the rent to be paid for the use of the building. There is nothing in the contract tending to show the parties understood it as constituting a partnership between them, and this is an action between, the parties,—one in which their intention, when ascertained, should prevail."

The provision in the contract under which defendant was to receive a percentage of the profits was not inserted to secure to him a share of the profits as such. It is apparent that there was uncertainty as to the income which plaintiff would derive from the operation of his theater when restricting the exhibition of pictures therein to those produced by and furnished to him by defendant. Defendant was willing that the sums to be paid to it for the use of the films and advertising matter, whether called license fees or rental, should be made somewhat dependent upon plaintiff's receipts. To this end the provision relating thereto was inserted. The percentage to be paid, over and above the minimum agreed upon, was not as a share of the profits as profits. It was the yardstick by which to determine the total sum defendant should receive for the use of the films and advertising. · If the receipts amounted to but the amount of the min-

imum and the operating expenses, it would get no more.

In *Morrison* v. *Meister, supra,* it was said:

"Sharing in profits may be evidence to be considered where the question of a partnership is involved, but it is not conclusive."

In that case, the defendant, owner of a lot in Detroit, agreed with plaintiff that if he would erect a dwelling house thereon, when sold the plaintiff should have his money first, then defendant his money, and that the profits should be equally divided. It was held that no partnership relation existed.

"Persons cannot be made to assume the relation of partners, as between themselves, when their purpose is that no partnership shall exist. There is no reason why they may not enter into an agreement whereby one of them shall participate in the profits arising from the management of particular property without his becoming a partner with the others, or without his acquiring an interest in the property itself, so as to effect a change of title." *London Assurance Co.* v. *Drennen,* 116 U. S. 461, 472 (6 Sup. Ct. 442).

In *Meehan* v. *Valentine,* 145 U. S. 611, 625 (12 Sup. Ct. 972), the tests applied were: "Actual participation in the profits as principal," or "that he authorized the business to be carried on in part for him or on his behalf." In *National Surety Co.* v. *Winslow,* 143 Minn. 66 (173 N. W. 181), it was held that "a stipulated share of the net profits" in itself "does not create a partnership or joint adventure." Another test which may well be applied is stated in *Keiswetter* v. *Rubenstein, supra,* in a quotation from *Kokesh* v. *Price,* 136 Minn. 304 (161 N. W. 715, 23 A. L. R. 643), as follows:

"When two persons are engaged in the prosecution of a joint enterprise, each has authority to act for both in respect to the means or agencies employed to execute the common purpose, and the negligence of one in the management thereof will be imputed to both."

If plaintiff had at some time forcibly ejected a patron of the theater without cause, or had unlawfully refused admission to one entitled thereto, could it be claimed under these contracts that defendant was jointly liable with him therefor? A comprehensive note reviewing the decisions of the State and Federal courts on this question will be found in 18 L. R. A. (N. S.) at page 998 *et seq.* The weight of authority is in accord with the somewhat early New York case of *Richardson* v. *Hughitt*, 76 N. Y. 55 (32 Am. Rep. 267), wherein it was said:

"Where, then, one is only interested in the profits of a business as a means of compensation for services rendered, he is not a partner."

That there was to be no division of the profits as such is apparent from the results of the operation during the last two months. The receipts were such that defendant under the contract was entitled to $5,393.63, while plaintiff's loss was $7,208.65.

The advancement made by defendant was but a loan to plaintiff. While it would not have been made had not the contract (Exhibit A) been entered into, the obligation to pay the note was in no way dependent upon the success or failure of the theater as a business enterprise.

In the allowance for expenses there was included a sum which plaintiff testified was a salary paid to him. It cannot be said from this provision that defendant was paying plaintiff a salary to run the theater. It simply agreed that, after its minimum license fee or rental was paid, plaintiff should retain as a part of the operating expense a stated sum to compensate him in part for his personal services before the balance was divided.

Under the contracts defendant had no voice in the manner in which the business should be conducted by plaintiff except its insistence that the advertising it

prepared should be used and a minimum admission fee be charged, and these solely for the purpose of increasing its license or rental charge. It incurred no liability to any person other than the plaintiff. The parties had no joint investment in property. The contracts fixed their rights and liabilities in every respect. On a breach by either, the other might declare the contract at an end and have an action for damages sustained thereby. The time within which plaintiff might bring such action was fixed in the contract. As was said by the trial court:

"Except as fixed and determined by the contract itself, neither party had or was to exercise any proprietary interest or control over that which the other had and exclusively controlled. There was no common property interest in what either party contributed to the business. There was no fixed scale providing for the ups and downs of the business to be applied alike to both parties at all times. One party took all the risk and shouldered all the loss all the time."

Plaintiff makes no claim that the defendant has in its hands or under its control any money or property belonging to him, or to him and the defendant jointly. Should an accounting be ordered, the only claim which plaintiff could present for allowance would be one for damages for defendant's breach of the contract. For such a claim the courts of law are at all times open.

Under the provisions of these contracts, both the plaintiff and the defendant incurred certain obligations personal to each. There was no joint obligation. There was no service to be rendered by them jointly. There could be no indebtedness incurred for which they were jointly liable. There was no sharing of losses. While they were both interested in the success of the venture, such success, even if both of the parties fully performed, was dependent upon the patronage of the public, over which, except by the class of pictures exhibited, the advertising, and the conduct of the

theater by plaintiff, they had no control. Suppose plaintiff had refused to accept the films from defendant and exhibit them as agreed. Would it be contended that defendant might then have taken possession of the theater and exhibited them itself? Clearly, its only relief would have been an action for damages for breach.

It is urged that "the law of the case has been already laid down" in our opinion in 221 Mich. 355, above referred to. The only question there considered was the action of the circuit court, in chancery, in dissolving the temporary injunction. It was there said:

"If this court were to reinstate the *status quo* we would be obliged to exercise our discretion on the questions of fact involved in the uncertain element of the contract."

The legal effect of the contracts entered into, whether they constituted a joint adventure, was not decided. In fact, the opinion proceeds on the theory that plaintiff was seeking to enjoin the defendant from "attempting to avoid its contract with him." In our opinion, the contracts did not constitute the parties joint adventurers.

The decree dismissing the bill is affirmed, with costs to appellees.

FLANNIGAN, C. J., and FELLOWS, WIEST, CLARK, McDONALD, and BIRD, JJ., concurred.

The late Justice SNOW took no part in this decision.