TEPSICH *v.* HEAD.

1. APPEAL AND ERROR—REVIEW DE NOVO.
    On appeal from decree divesting defendants of their interest in
    realty owned by them and plaintiffs as tenants in common in-
    cident to the operation of a joint venture or partnership, the
    Supreme Court considers the case *de novo.*

2. SAME—PARTNERSHIP—JOINT ADVENTURE—INSOLVENCY.
    In suit between members of a partnership or joint venture for
    an accounting and appointment of a receiver where both
    parties agree that their relationship should be dissolved and
    the inadequately financed business is insolvent it is unneces-
    sary to determine the nature of the relationship.

3. SAME—UNCLEAN HANDS—EVIDENCE.
    In suit for an accounting and appointment of a receiver for
    business undertaking relative to lots in a subdivision, record
    *held,* not to sustain charge of either party that the other
    comes into court with unclean hands.

4. PARTITION—INSOLVENCY—ACCOUNTING—RECEIVERS.
    Defendant's request for partition of lands involved in suit for
    accounting and appointment of a receiver of an insolvent
    business undertaking in real estate was ill-timed since the
    question of partition will not arise unless a surplus remains
    after payment of creditors.

5. RECEIVERS—INSOLVENCY—ACCOUNTING.
    In suit for an accounting and for appointment of a receiver
    of an insolvent venture in real estate, entered into by plain-
    tiffs with full knowledge of the circumstances and without
    fraud or misrepresentation on the part of defendants, evidence
    did not justify trial court's decree divesting defendants of
    their interest in the premises while remaining liable for the
    indebtedness of the business since defendants are entitled
    to a proper and orderly liquidation of the business and its as-
    sets by way of receivership.

Appeal from Ingham; Hayden (Charles H.), J. Submitted June 15, 1943. (Docket No. 29, Calendar No. 42,391.) Decided September 7, 1943.

Bill by Theodore M. Tepsich and wife against Raymond L. Head and wife for dissolution of a partnership, an accounting, and appointment of receiver. Cross bill by defendants against plaintiffs for partition. Decree for plaintiffs. Defendants appeal. Decree ordering dissolution and remanding case for appointment of a receiver.

*Leon Dreifuss*, for plaintiffs.

*Shields, Ballard, Jennings & Taber*, for defendants.

STARR, J. Defendants appeal from a decree divesting them of their one-half interest in certain property owned by the parties hereto under a partnership or joint venture agreement.

Plaintiff Theodore Tepsich, husband of plaintiff Rela Tepsich, had been engaged in the building construction business in the city of Detroit for several years. Defendant Raymond Head, husband of defendant Margaret Head, had been in the business of negotiating Federal Housing Administration mortgage loans in the city of Lansing.

Tepsich and Head, who were previously acquainted, met again in the spring of 1941, at which time Head explained that he was in financial trouble and needed money. Tepsich loaned him $250 and from time to time thereafter loaned him additional sums. Shortly after that Head attempted to interest Tepsich in the purchase of about 168 lots, which comprised all or substantially all of the so-called Elmhurst subdivision in the city of Lansing. Tep-

sich and his wife went to Lansing and, after inspecting the property, he told Head, "The proposition looked    *    *    *    very good." They then entered into an oral partnership or joint venture agreement, the terms of which are in dispute, whereby they were to purchase, improve, and develop the Elmhurst subdivision, sell the lots, and divide the profits equally. Under such agreement Head was not required to invest any money, but was to contribute his full time and efforts. Head contends in substance that Tepsich agreed, if necessary, to advance the 'down payment of $4,200 for the purchase of the property and to assist in its development and in the construction of houses thereon. Head also claims it was agreed that from time to time he could withdraw such money as was necessary for living expenses. Tepsich denies that he agreed to advance the full down payment or that he agreed Head could withdraw living expenses. He claims, in effect, that he was to put up only $1,500 as the initial binder payment and that all subsequent payments and financing were to. come from the sale of lots.

On April 25, 1941, Tepsich gave Head written authority to act for him "relative to any negotiations in the Elmhurst subdivision," and on May 7th they entered into an agreement to purchase the 168 lots at a price of $16,800. Tepsich advanced the initial payment of $1,500 but later refused to advance the balance of the required down payment of $4,200, and such balance was obtained in part from the sale of lots and in part by a second mortgage loan. On December 30, 1941, the property was conveyed by deed to plaintiffs and defendants, and they executed promissory note and mortgage to the seller for the balance of $12,600 due on the purchase price. On January 14, 1942, the parties executed a written agreement which stated in part that plaintiffs and

defendants each had "an equal undivided interest in the 168 lots * * * in Elmhurst subdivision."

Tepsich and Head filed a certificate of copartnership under the name of "Tepsich-Head Construction Company." They began the construction of three houses on the subdivision, one of which was completed and sold, but two of which had not been completed when the present suit was begun. They built an office building on the property, made sewer and street improvements, and sold about 29 lots. Head lived in Lansing and apparently devoted most of his time and efforts to conducting and managing the business. His wife, defendant Margaret Head, kept the books for several months. Tepsich sent about $400 of building materials from Detroit to Lansing, which were used in construction work on the property. He also paid some bills of the business and some of Head's personal bills, but apparently did not devote much effort to the business.

Trouble developed between the parties over Head's management of the business; his withdrawal of money for living expenses; his use of the office building for living quarters; and over his personal indebtedness to numerous creditors. Financial trouble also developed, as $6,000 or more of debts had been incurred, and the business had no income except from the sale of lots and one completed house. Creditors began to press Tepsich for payment; and on July 9, 1942, he and his wife began the present suit, alleging, among other things, that the business was insolvent. They asked for an accounting and for the appointment of a receiver. Defendants filed answer and cross bill, asking that the property be partitioned between the parties or, in the alternative, that it be sold, the liens and debts paid, and the balance of the proceeds, if any, divided equally between them.

During the trial, in response to questions by the court as to the relief plaintiffs sought, their counsel stated:

"First, for the dissolution of the partnership, which    *    *    *    (defendants' counsel) agrees to. *    *    *    Also    *    *    *    an accounting of the partnership with determination of the amount that is due Mr. Tepsich.    *    *    *    The court might find it necessary to appoint a receiver to determine the liability and to complete the two uncompleted houses and    *    *    *    endeavor to sell enough lots to meet the liability (liabilities)."

In his opinion divesting defendants of their one-half interest in the property and in the partnership or joint venture, the trial court stated in part:

"Apparently plaintiffs and defendants intended to form a partnership; possibly the relationship amounted to a joint adventure; however, it makes little difference.    *    *    *

"The one fact over which there can be no dispute is that the business relations between the parties, which have been practically in control of the defendants Head, have been handled in a most loose, irregular and unbusinesslike manner, and that as a result thereof the situation presented at the present time is one of hopeless insolvency unless the necessary funds for the carrying on to completion of the project, together with the payments on debts, taxes and liens now accrued, are furnished by the plaintiff. Plaintiffs apparently stand to lose, even if defendants receive nothing further, as there is now a substantial indebtedness for which creditors are clamoring, and it is purely conjecture as to what the profits of the venture will be, if any, even though carried through to completion.    *    *    *    An orderly procedure by which this matter might be terminated it may be argued is to appoint a receiver, but it is immediately apparent upon reflection that to do so

would be to indefinitely prolong a situation, the only certain outcome of which at this time would be a large amount of added expenses, with at best only indifferent and unsatisfactory administration in return for the same.  *  *  *

"It is needless to point out that a continuation of the relation between the parties under the circumstances, and any constructive progress of the venture, is futile and hopeless of successful results. It is therefore my conclusion, and I find, that defendants have no further interest in the property, which will leave plaintiffs free to pay the obligations to creditors already incurred and to proceed as they may see fit in an attempt to salvage the project, or at least secure themselves against further loss."

On December 15, 1942, a decree was entered dismissing defendants' cross bill, dissolving the partnership or joint venture, and determining that defendants "have no further right, title or interest" in the real estate in question. The decree determined plaintiffs to own the real estate "in fee simple" and ordered defendants to quitclaim the same to plaintiffs. In conclusion, the decree provided that it was "in full settlement and adjustment of all property rights, claims, or liabilities between said parties arising out of or by reason of this venture." Defendants appeal from such decree, and, this being a chancery case, we consider it *de novo*.

It would serve no purpose to discuss the conflicting testimony of the parties regarding the terms of their oral agreement or the testimony relative to the management and the financial condition of the business. It is sufficient to say that the business, which was never adequately financed, is now insolvent and that the animus existing between the parties makes it impossible for them to continue together. Both parties agree that their relationship should be dis-

solved. It is unnecessary to determine whether the relationship was that of a copartnership or a joint venture. *Gleichman* v. *Famous Players-Lasky Corp.,* 241 Mich. 266; *Keiswetter* v. *Rubenstein,* 235 Mich. 36 (48 A. L. R. 1049). The record does not sustain the charge of either party that the other comes into court with unclean hands.

The lands in question, subject to mortgages thereon, are owned by the parties as tenants in common. Their interest in such lands, together with other assets of the business, is subject to the liabilities of the creditors of the partnership or joint venture. Defendants' request for a partition of the lands is ill-timed, as the question of partition will not arise unless a surplus remains after the payment of creditors. *Chase* v. *Angell,* 148 Mich. 1 (118 Am. St. Rep. 568).

The important question before us is whether or not the trial court was justified in divesting defendants of their one-half interest in the property and business and in giving such interest to plaintiffs. The testimony shows that prior to entering into the oral agreement of partnership or joint venture, plaintiffs had inspected the property, and it also shows that they knew defendants were in financial trouble and without funds. Plaintiff Theodore Tepsich testified that he knew defendant Head had no money and "that what money was put up would have to be put up" by him. The record shows no fraud or misrepresentation by defendants which induced plaintiffs to join in the relationship and purchase of the property. Plaintiffs went into the business with their eyes open. The unfortunate financial results of the relationship and business might elicit sympathy but would not affect the legal rights of the parties. The testimony indicates that each of the parties may have breached their oral

agreement in some particulars, and also that defendants may have mismanaged the business.

However, we find no evidence of fraud on the part of defendants which would justify depriving them of their interest in the property. To take away defendants' interest while defendant Raymond Head, as a member of the partnership or joint venture, remains liable for the indebtedness of the business, might result in a serious injustice to him. In the absence of fraud or unusual circumstances not present in the instant case, to hold that a court may take the interest of one partner and give it to the other partner, opens the door to possible unjust and inequitable results.

Our attention has not been called to any authorities which, under the facts and circumstances of the present case, would justify the court in arbitrarily divesting defendants of their interest in the property and business and awarding such interest to plaintiffs. Although the business may be insolvent, with little possibility of the parties ever realizing anything from their investment of time, effort, and money, nevertheless, defendants are entitled to a proper and orderly liquidation of the business and its assets. A receiver should be appointed and the business and property liquidated in the usual manner under the direction of the trial court.

The decree entered December 15, 1942, is vacated and set aside. A decree may be entered in this court dissolving the partnership or joint venture and remanding the case to the trial court for the appointment of a receiver and for further proceedings in accordance with this opinion. Defendants shall recover their costs.

Boyles, C. J., and Chandler, North, Wiest, Butzel, Bushnell, and Sharpe, JJ., concurred.