## SUSAN L. WELLS v. BURTON BABCOCK.

### · *Partnership—Division of profits.*

**1.** A series of independent transactions wherein W selects lands and B supplies money and buys them, and they divide the profits on selling them again, do not in themselves establish a partnership. Nor would an accumulation of such purchases and the holding of the lands for suitable opportunities to sell or for lumbering.

**2.** An arrangement by which B furnished timber and capital for manu-
· facturing shingles and was to be paid interest on all moneys advanced and invested by him in the business, and give his whole time and personal attention to its management, B to receive two-thirds of the net profits and W one-third, from the date of beginning the manufacture and after payment of running expenses, was treated as a partnership.

**3.** Where one partner furnished timbered land to be lumbered by the firm and also furnished tools and outfit for the work, and was to be paid interest upon his moneys invested, the agreed cost of the timber was properly taken as the cost of the land less its value as stripped and returned to him, since the land itself was not to be used; and land from which no timber was taken should not be considered in an accounting, nor should the firm be charged with taxes on land for which he received credit. And it was proper to allow for outfit at the difference between its first cost and the value of what was left when the firm dissolved, the wear and tear being in some degree a consumption of it and consequent diminution of profits.

**4.** A partner who is to be paid interest on moneys advanced, but who receives most of the money arising from the business as it comes in, cannot justly draw interest on funds in his own possession that are practically identical with his advances; but an arrangement by which he is allowed interest on the excess of advances over receipts, without compounding, is proper.

**5.** No allowance should be made in a partnership accounting for matters antedating the partnership, even though relevant as evidence.

**6.** Monthly balances in a partnership accounting do not fairly represent new principal, and interest on them should not be compounded.

**7.** Where one of the parties to an accounting has the proceeds of the business in his hands on dissolution of the firm, interest is properly allowed against him on so much as remains due from him after dissolution.

Appeal from Ionia. (V. H. Smith, J.) Jan. 21.—April 9.

BILL for accounting. Complainant appeals. Reversed.

*Mitchel, Bell & McGarry* for complainant.

*Morse, Wilson & Trowbridge* for defendant. A firm designation does not make a partnership . *Hall v. Edson* 40 Mich. 651; *Wilcox v. Matthews* 44 Mich. 192; *Beecher v. Bush* 45 Mich. 188; *Leggett v. Hyde* 58 N. Y. 272–280; *Smith v. Bodine* 74 N. Y. 33; *Richardson v. Hughitt* 76 N. Y. 55; *Lintner v. Millikin* 47 Ill. 178; *Ruddick v. Otis* 33 Ia. 302–404.

CHAMPLIN, J. Complainant files her bill praying for the dissolution of a copartnership, and for accounting.

She states that in January or February, 1879, she entered into a copartnership with defendant for the purpose of purchasing lands of imperfect title, settling or perfecting the titles to the same, and then selling and disposing of said lands. Babcock was to furnish all the money necessary to carry on the business, and Chauncey P. Wells, the husband of complainant, was to do all the necessary labor and use all the skill, business tact and ability he possessed in conducting and prosecuting said business, in the profits and loss of which complainant and defendant were to share equally. That the contract was verbal and no time fixed for its termination; and the firm was to be known as Babcock & Wells. That immediately after its formation the firm entered at once upon said business, and continued to carry it on until February or March, 1881, at which time an additional arrangement was entered into. That in purchasing lands with imperfect titles the firm purchased of Moses Berridge the pine timber on forty acres of land, on or about the 12th day of July, 1880, and on the 30th it purchased of A. & J. McPherson forty acres of pine land, which land and timber was sold a few days after at a profit. That during October, 1880, the firm bought from James McCreedy eighty acres of pine land, and sold the same in December at a profit. That on October 15, 1880, they purchased of Chauncey J. Rumney two hundred acres of land. That on the 30th of October, 1880, the firm

bought of Jacob Weeks the undivided one-third of three hundred acres of land, which was afterwards divided, the firm receiving the north one-third of the half section. That on the 10th of November, 1880, the firm purchased the pine timber remaining on about eight hundred and forty acres of land from Whitney & Stinchfield, and on the 26th day of August, 1881, they purchased from David E. Wilson eighty acres of pine land. All of these lands were situated in the counties of Ionia and Montcalm. The aggregate purchase price exceeded $18,000.

The bill further charges that the title to all these lands was taken and held by the firm in the name of Burton Babcock; that the money paid therefor was furnished by him, and when sold the money was received by him. The bill then alleges that the firm, in the latter part of November or first part of December, 1880, entered into contracts with Freed Brothers, with S. & W. D. Gould, and with Charles A. Chilson, to cut the pine and manufacture into shingles upon certain descriptions of said lands; that these contracts were made in the name of Burton Babcock for the benefit of the firm of Babcock & Wells; "that some time during the month of February or March, 1881, the said Burton Babcock and said Chauncey E. Wells (the said Chauncey E. Wells acting as the agent of your oratrix in all the business transactions of said firm) had a talk in relation to how the business of manufacturing and selling shingles should be carried on, and it was then and there agreed by the said Chauncey E. Wells, for and in behalf of your oratrix and the said Burton Babcock, that the business of manufacturing and selling said shingles should be carried on in the name of B. Babcock & Co., in order that the same might be kept separate from the other business of said firm; that as the business of manufacturing and selling shingles would necessarily require a large amount of money to manage the same successfully, which said Burton Babcock agreed to furnish, the said firm should pay him interest on the money advanced by him with which said manufacturing business should be carried on." The bill then avers that said firm engaged extensively in said busi-

ness, and caused to be manufactured large quantities of pine shingles and sold the same upon the markets, and in said business was very successful until on or about December 29, 1882, when the firm was dissolved and notice thereof published by said Burton Babcock. The bill contains other charges relative to partnership assets and attempts at settlement, etc., but enough has been stated for the purposes of a decision of the points in controversy in this case.

The answer denies the existence of any partnership between complainant and defendant, either under the name of Babcock & Wells or B. Babcock & Co. Denies there ever being such firm as Babcock & Wells, or any copartnership with complainant, or her husband, in the imperfect land-title business. Avers that Chauncey E. Wells came to him from time to time with descriptions of land that he wanted defendant to buy in defendant's name, which he did, dividing profits on sale with said Wells without any partnership whatever, or any talk of any. Wells had no money, and defendant furnished him with money to buy each separate piece, and that each purchase was a separate venture, and had nothing to do with the subsequent purchase of pine lands by defendant, or the arrangements made between him and C. E. Wells for the manufacture of lumber and shingles. Denies that he made any such arrangement or agreement with complainant or with Chauncey E. Wells, as her agent, as claimed by complainant, with reference to the manufacture and sale of shingles, but says that in February or March, 1881, he did make an arrangement with Chauncey E. Wells, on said Wells' own account, as follows: Said Wells agreed to take charge of the whole business of manufacturing the timber on the pine lands heretofore mentioned; move up north, near McBride's, with his family, so he could be on the ground; give his entire time, attention and ability to said business; to see to the stocking of the mills, letting of jobs to stock mills, and thereby make it unnecessary for this defendant to go north, except as this defendant might see fit to go to supervise said business; this defendant then being principally engaged in farming, and living on his farm as afore-

said.   Said Wells, in consideration for such services, was to
have one-third of the net profits in the manufacture and sale
of said lumber and shingles, after said business of manufac-
turing had paid all running expenses of said business, and
the expense of buying said lands and paying taxes upon same
as long as timber was being cut off from them.   It was also
agreed that the business should pay to this defendant interest
at eight per cent. annually upon all moneys invested by de-
fendant in said land or timber, taxes, tools, utensils, teams,
camp supplies, etc., or invested in anything pertaining to said
business.   Said Wells was to have one-third of the net profits
from the time defendant had commenced manufacturing, in
the shingles and lumber then manufactured.

Proofs were taken covering nearly 1200 pages of printed
matter, including the pleadings.   Upon the hearing, the cir-
cuit court, sitting in chancery, entered a decree dismissing
the bill of complaint.   We have carefully read the testimony
in this case, voluminous as it is, and have come to the follow-
ing conclusions therefrom :

1. That no partnership existed under the name of Babcock
& Wells in the purchase of imperfect land titles; that each
venture in the purchase of land with imperfect titles was
separate and distinct from the others, concerning which no
partnership existed.

2. That no partnership existed with reference to the pur-
chase of pine timber or pine land, these purchases having
been made without any agreement which would constitute
such ventures a partnership transaction.

3. That a partnership agreement was entered into between
the complainant and defendant with reference to the manu-
facture and sale of shingles from pine timber owned by the
defendant, by which the defendant was to furnish the timber
and the capital necessary to carry on the business, for which
he was to receive interest on all moneys advanced by him at
the rate of eight per cent. per annum, and also the same rate
of interest on all moneys invested in the lands or timber
operated upon, as well as that invested in tools, utensils, teams,
camp equipage, and supplies, taxes, or anything pertaining to

said business. The said Chauncey E. Wells was to devote his entire time and ability to the carrying on of the business and the net profits derived from said business were to be divided as follows: Burton Babcock was to receive two-thirds thereof, and Susan E. Wells was to receive one-third thereof. The business of the copartnership was to include all shingles that had been manufactured under contracts previous to its being entered into, as well as such as should be manufactured after the partnership agreement was made. The firm name was B. Babcock & Co., and the agreement for copartnership was entered into in February or March, A. D. 1881, and was terminated December 29, 1882.

By the terms of the agreement the partnership was confined to the business of manufacturing and selling shingles during its continuance, and does not include or embrace any land or timber as assets of the firm.

Let a decree be entered here reversing the decree of the circuit court, and in accordance with the views above expressed, and for a dissolution of the partnership, and an accounting in accordance therewith, and remanding the cause to the court below for further proceedings.

The other Justices concurred.

Appeal from Ionia. (V. H. Smith, J.) Jan. 16–17.—Apl. 8.

BILL for accounting. Both parties appeal. Modified.

*Mitchel & McGarry* for complainant.

*Wilson & Trowbridge* and *A. A. Ellis* for defendant.

CAMPBELL, C. J. This case now comes before us on objections to the accounting which was ordered by our final decree. That decree found that a partnership existed between complainant and defendant which was confined to the shingle business, complainant owning one-third and defendant owning two-thirds of the business. It was also decreed that defendant should be allowed interest at eight per cent. on his money advances, and upon his investment in the land

and timber operated upon, as well as that invested in tools, utensils, teams, camp equipage and supplies, taxes or anything pertaining to the business.

Inasmuch as this decree was intended to distinguish the partnership in shingle making from all the other dealings set out in the bill, we think that the present settlement must be confined to that business, and to the mutual claims and credits belonging to it. The items are numerous, but the disputed matters are all within a narrow compass, and can be disposed of as presented on the argument.

The first question which the court below found itself called on to discuss was on what items interest was to be charged, and what should be considered as advanced to the firm so as to be chargeable for the value.

No question was raised concerning money advances, but there were disputes as to timber, and as to the various articles of outfit.

The court below held that all timber used by the firm in its operations, and manufactured or converted into shingles, should be credited to defendant. It was also held that the tools and other outfit should be allowed for at the difference between first cost and the value of what remained after dissolution.

It appears to us very clear that the interest of eight per cent. was to be allowed to defendant as the equivalent of the use of his capital furnished, whether in money or otherwise, and that what was not returned must be paid for. The agreed cost of the timber was properly taken as the cost of the land less its value as returned to him. The land was not to be used as land by tillage or occupancy. The only use made of it was in removing for consumption its growing timber, so that when returned it lacked that valuable feature, and was to that extent consumed. We think that the difference between its cost and its value as stripped was properly allowed as the amount to be allowed for the timber, and that the land from which no timber was cut was not to be considered in the accounting. The court below took this view substantially.

We have had more doubt concerning those articles of out-fit which have suffered diminution in value from use, or, as it was familiarly spoken of below, from wear and tear. We are, however, satisfied that these were also rightly dealt with and allowed. The use of personal property is practically a modified consumption of it. Had these articles not been furnished, it would have been necessary to procure them, and defendant would have had interest on the money advanced to buy them. Their wear and tear would have so far diminished the profits, and the same result would be reached, and the net profits would have been just so much less. It would need a very definite exemption to prevent this construction, and, in our view, the case does not call for any different rule. We think the court decided this point correctly.

Another question is as to the allowance of interest. Most of the money arising from the business went into the hands of defendant. He could not justly draw interest on funds in his own possession, and which were practically identical with his advances. The court below struck monthly balances and credited interest monthly upon them, so as to give him interest on the excess of advances over receipts, as nearly as possible, but not compounding. Complainant claims that interest should be charged on each side of the account, on every item, from its date to the time of dissolution. There was testimony tending to show that monthly balances were to be considered, and we are not disposed to disturb this finding.

Complainant objects to the allowance of $716.99, charged on individual checks given by defendant, as she claims, to her husband, and not to herself. Mr. Wells had charge of the business on her behalf, and we think these advances meant, as the court below found they meant, moneys drawn on her account.

Various small items were rejected by the court below against complainant's objection. One was $50, for 25 thousand feet of logs skidded on Stinchfield land, and claimed to have been used by defendant. The testimony is not clear that they were of any particular value. Neither do we think that the cost of certain clearings made on defendant's land

in connection with mill operations, even if made out more definitely than it is, should be charged against him. It may or may not have added to the value of his land more or less. It seems, so far as done, to have been done for firm purposes, and to have been a legitimate firm outlay. Upon certain items of board there is not enough to pass upon.

A charge of $523.08 for a note of complainant to defendant was, we think, improper. It was an item accruing some time before the partnership was formed, as ascertained by our former decree, and had nothing to do with the partnership accounting. It was not included or referred to in any of the issues, and was admitted under an amendment to the answer allowed at the hearing. When we threw out of our former decree all matters but the partnership, this note, which may possibly have had some relevancy to some of the other transactions, became entirely irrelevant as to this accounting, and the complainant was not bound to anticipate the claim of any such debt.

This concludes all that we deem important concerning complainant's objections to the decree.

Defendant also appeals. His claim that interest on his monthly balances should be compounded is not, in our view, tenable. Those balances cannot be fairly made to represent new principal. Neither do we think the court erred in refusing to charge the firm with taxes on defendant's own property, for which he obtained both interest and credit for advances, or which was not used by the firm; and we are satisfied with the conclusions of the court below upon the value of the property left.

We are also of opinion that interest was rightly made to run on the balance found to be due at the dissolution. Defendant had the proceeds in his hands, and there is no hardship in requiring him to pay for their use.

The decree must be modified so as to make the balance due December 24, 1885, the day of the computation, to be $4784.41; and the defendant will be decreed to pay that sum, with interest from December 24, 1885, with costs of

both courts, to be taxed in this Court, and the record remanded for execution accordingly.

SHERWOOD and CHAMPLIN, JJ. concurred; MORSE, J. did not sit, having been of counsel.