### BUSH *v.* HAIRE.

1. PARTNERSHIP—HOW CREATED—CONSENT OF PARTIES.
   Consent of all parties must be found in order to create a partnership relation, as between the parties, and it may be express or implied, but it must be manifested or signified in some way, by writing, by parol, or by conduct.

2. SAME—RELATION OF PARTIES—BURDEN OF PROOF.
   In an attempt to establish a partnership *inter se* the burden rests upon the partner attempting to prove it.

3. SAME—EVIDENCE—SUFFICIENCY.
   A partnership *inter se* must be established by preponderating evidence.

4. SAME—ACCOUNTING—EVIDENCE—SUFFICIENCY.
   On a bill for an accounting of alleged copartnership moneys and for a dissolution of the alleged partnership, evidence *held*, insufficient to show a general partnership for engaging in the real estate business.

5. PLEADING—PARTNERSHIP—JOINT ADVENTURE—VARIANCE.

> A decree granting relief to plaintiff should be reversed and
> a decree dismissing a bill of complaint for an accounting
> of alleged partnership money without prejudice to plain-
> tiff to institute proceedings for relief on the theory of
> joint adventure should be rendered, where such bill was
> framed on the erroneous theory that a general partner-
> ship for engaging in real estate business existed, when
> it should have been framed on the theory of joint ad-
> venture.[1]

Appeal from Charlevoix; Sullivan, J., presiding.
Submitted January 19, 1917. (Docket No. 79.) De-
cided July 26, 1917. Rehearing denied December 28,
1917.

Bill by Stanley A. Bush against Clark Haire and
another for the dissolution of a partnership and for an
accounting. From a decree for plaintiff, defendants
appeal. Reversed.

*Clink & Williams,* for plaintiff.

*Harris & Ruegsegger (Geer, Williams & Martin,* of
counsel), for defendants.

KUHN, C. J. It is the plaintiff's contention that on
or about May 15, 1911, he and the defendant Clark
Haire, at that time residents of the city of East Jor-
dan, entered into a copartnership for the purpose of
dealing in real estate, purchasing and selling and aid-
ing in the purchasing and selling of real estate, timber
lands, lumber and timber and options thereon; that the
firm name was to be Bush & Haire and all purchases
and deals of the firm were to be made in the name of
Mr. Haire or Mr. Bush, or in the name of Bush &
Haire, and that all land, timber lands, lumber, and
timber were to be partnership property, regardless of

---

[1]On effect of agreement to share profits as creating a partner-
ship, see comprehensive note in 18 L. R. A. (N. S.) 963.

whether they were purchased in the name of Bush & Haire, Stanley A. Bush, or Clark Haire; that the partnership was to continue for an indefinite time, and that they were to share the profits and losses equally. The bill prays for an accounting of the alleged copartnership moneys by Clark Haire, for a dissolution of the copartnership and for a decree that the defendant Clark Haire pay any sum or sums found to be due the plaintiff upon an accounting. The defendant denies that any general copartnership existed, and says that all his dealings with the plaintiff were separate and distinct transactions, and that Mr. Bush never had any interest in any of the sales or options, unless he performed some service in connection with the sale, and in the deals in which they were jointly interested any profit resulting therefrom has been divided with Bush. In this case we have the benefit of the testimony of the parties in interest, and a square question of fact is presented. The trial judge, after hearing the testimony, in his findings sustained the contention of the plaintiff and found the existence of such a copartnership.

In approaching the consideration of this question of fact the first and basic principle underlying a copartnership should be held in mind, namely, that consent of all the parties must be found in order to create such a relation. It may be expressed or implied, but it must be manifested or signified in some way, by writing, by parol, or by conduct. Mr. Justice COOLEY concisely said in *Beecher* v. *Bush*, 45 Mich. 188, at page 193 (7 N. W. at page 785, 40 Am. Rep. 465):

"If parties intend no partnership the courts should give effect to their intent, unless somebody has been deceived by their acting or assuming to act as partners; and any such case must stand upon its peculiar facts, and upon special equities."

And again, on page 200, he says:

"* * * Except when one allows the public or individual dealers to be deceived by the appearances of partnership when none exists, he is never to be charged as a partner unless by contract and with intent he has formed a relation in which the elements of partnership are to be found. And what are these? At the very least the following: Community of interest in some lawful commerce or business, for the conduct of which the parties are mutually principals of and agents for each other, with general powers within the scope of the business, which powers however by agreement between the parties themselves may be restricted at option, to the extent even of making one the sole agent of the others and of the business."

In a somewhat similar and more recent case (*Miller* v. *Casey,* 176 Mich. 221, at page 228 [142 N. W. 589, at page 591]) Chief Justice STEERE said the following:

"It is true that a court of equity may hold real estate standing in the name of individual partners to be partnership property, where the acts, words, and conduct of the parties show it to have been treated as such, and that such was their thought and intent; but this must be convincingly established by clear, preponderating evidence."

Having also in mind the well-established rule that in an attempt to establish a partnership *inter se* the burden rests upon him who seeks to prove it, and that it must be established by preponderating evidence, we do not think that this record can be read and the conclusion arrived at that it was the intention of the parties involved to engage in a general copartnership for the purposes set forth by the plaintiff in his bill. It would not be profitable to attempt to review all the testimony, but it will be sufficient to call attention to some of the considerations that have forced this conclusion. No written instrument or memorandum in writing is produced to establish it, and the proofs in support of plaintiff's contention rest entirely upon the alleged parol agreement and certain alleged admis-

sions by the defendant. The testimony of the plaintiff to sustain his contention is as follows:

"*Q.* Well, Mr. Bush, tell the whole conversation; everything you talked about.

"*A.* We made an agreement to handle real estate and timber lands and options and commissions on lumber, and the partnership was formed for an indefinite length of time, and the losses were to be divided equally and the profits, if any, were to be equally divided and the title to the different properties that we purchased were to be taken in the names of Mr. Haire or myself, or in the name of Bush & Haire.

"*Q.* How did you arrive at the name of Bush & Haire?

"*A.* Mr. Haire suggested that name."

This conversation was supposed to have taken place on or about the 15th of May, 1911, in the home of the plaintiff and in the presence of his wife. The exact date is not fixed. Mrs. Bush testified in reference to this as follows:

"I recall Mr. Bush and Mr. Haire talking of going into business together at our home in South Arm in the spring of 1911. It was about real estate and timber, and the fact that they were to divide the profits and losses equally. They discussed different pieces; Mr. Haire was interested, discussing things that he thought was good business in the south where he had just returned from; he spoke of the dyeing business and the furniture business, and spoke of the possibility of profits in that. Mr. Bush spoke of the timber business and the profits in that; possible profits. They discussed the different Ward lands and possible Porter lands, and the profits on those. And the name of the firm was to be Bush & Haire, and the title was to be taken in any of their names; either Bush & Haire, or Clark Haire, or Stanley A. Bush. Mr. Bush and Mr. Haire and myself were present, although I was in the adjoining room. I don't know how they came to agree on the firm name. Afterward I heard conversation between my husband and Mr. Haire in regard to business transactions in relation to timber and lumber very frequently. They were to our house a great deal, and

we were at their house at times. When a deal had been completed there was discussion concerning that, to the exclusion of almost everything else. Mrs. Haire was present on a great many occasions."

It is true that the parties had a joint interest in several deals and land transactions, but taking all the facts as shown by the record into consideration, it is convincing that each transaction was a deal in itself separate and distinct, and that the profits of no one of the deals was computed with another.

Much testimony was offered by the way of proof of the introduction by Mr. Bush of Mr. Haire as a partner to third persons, and it is contended that the statements of Mr. Bush that he was a partner and Mr. Haire's failure to deny at the time that he was a partner when introduced as such was an admission. In view of the fact that the parties were interested in several joint undertakings, the use of the term "partner" might aptly be applied to their relations in any one of the undertakings in which they were jointly interested, and yet would lack much of being an admission of a general copartnership such as is here attempted to be established. It may be said of the use of the word "partner" under these circumstances, as was said in the case of *Brotherton* v. *Gilchrist*, 144 Mich. 274 (107 N. W. 890, 115 Am. St. Rep. 397), by Chief Justice CARPENTER:

"* * * Under the circumstances we think that it is merely an instance of the use of inexact words to describe a relation which was not that of a partner."

The evidence shows that both Bush and Haire, during the period of the alleged copartnership, were on friendly terms, and each was an experienced business man. In our opinion it is an important circumstance emphasizing the nonexistence of such a copartnership denied by the defendant that no written agreement was ever made. It is also very strange that if a partner-

ship name was adopted, as claimed by the plaintiff, it was never used by the parties themselves in their correspondence, and the public was in no way advised that there was a partnership under that name. Under the circumstances of this case the settlement of the different ventures, separate and distinct, was contrary to the idea of a general copartnership relation, which comprehends all such partnership ventures. No firm books of account were kept during the four years of the existence of the alleged copartnership, and no letter heads were used by them containing the firm name. As to three other deals which were not immediately closed by settlements written memoranda were made by the parties defining their respective rights, which is also in our opinion inconsistent with the idea of a general copartnership. There was no general partnership fund created, and in fact the terms of the alleged copartnership are so vague and uncertain that it does seem probable that it could have been the intention of these experienced business men to enter such an undertaking with reference to all their land dealings covering the years in question. A careful study of this record forces the irresistible conclusion that such dealings as the parties had with one another were a series of independent transactions, each separate and distinct from the others, concerning which no general copartnership existed. See *Wells* v. *Babcock*, 56 Mich. 276 (22 N. W. 809, 27 N. W. 575). It may be here said in the words of Chief Justice CAMPBELL, found in *Pulford* v. *Morton*, 62 Mich. 25, at page 28 (28 N. W. 716; at page 717) :

"The vagueness of the whole arrangement, as testified to by complainant, would of itself render it improbable that any definite partnership arrangement was understood by both parties to have been made. The circumstances do not corroborate it, and it is clearly and absolutely denied by defendant, who claims complainant was not a partner, but acting on some

brokerage or commission agreement. In such a conflict we think we should not be justified in finding a general partnership, and still less in finding that it was definite enough to act upon. We do not think it proven."

The plaintiff's bill of complaint is framed solely on the theory of a general copartnership and relief can therefore only be granted on that theory, as was clearly pointed out in *Miller* v. *Casey, supra.* The plaintiff having, in our opinion, failed to establish a general copartnership by preponderating evidence, it follows that the decree of the lower court should be reversed and a decree here entered dismissing the bill of complaint, with costs to the defendants, but without prejudice to the plaintiff to institute such proceedings as he may deem proper to obtain relief on the theory of joint adventure.

STONE, OSTRANDER, BIRD, STEERE, BROOKE, and FELLOWS, JJ., concurred. MOORE, J., did not sit.