(No. 4872.   March 9, 1928.)

FRED J. PALMER and GEORGE S. PARKS, Respondents, v. J. W. MANEY, JOHN MANEY, H. G. WELLS and E. J. WELLS, as Copartners, Doing Business Under the Firm Name of MANEY BROTHERS & COMPANY, and THE FIDELITY & DEPOSIT COMPANY OF MARYLAND, a Corporation, Appellants.

[266 Pac. 424.]

CONTRACT—INTERPRETATION—BREACH OF PROMISE TO PAY IN SPECIFIC ARTICLES—DAMAGES—PARTNERSHIP.

1. Contract conveying right, title and interest to irrigation project *held* not void for indefiniteness by reason of provision authorizing grantees to proceed by method other than as authorized by Carey Act for reclamation of lands by obtaining permission of state engineer.

2. Contract conveying right, title and interest in irrigation project held *not* unenforceable owing to noncompletion of project because of provision for payment of consideration by transfer of paid-up water rights and water contracts, grantees, in absence of provision limiting time for completion, being required to complete system and deliver water rights and contracts within reasonable time.

3. Where purchasers of interest in irrigation project, in consideration of transfer of paid-up water rights and water contracts

of a certain value, failed to complete project, measure of damages to vendor is not limited to actual damages sustained, since purchasers cannot take advantage of their own nonperformance to absolve themselves from payment of purchase price, and agreement determining value of water rights, together with bond given to secure payment thereof, constituted in effect fixing of purchase price.

4. Vendors of right, title and interest in irrigation project in consideration of the transfer of water rights of agreed value, with an additional consideration contingent on success of enterprise, *held* not copartners with purchasers in such undertaking, having no voice in management and no control over purchasers in carrying on the work.

5. Mere agreement to share in profits, of itself, constitutes neither a "partnership" nor a "joint adventure," such relationship requiring showing that such was intent of parties, or such as to estop a denial of it against third parties.

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Clinton H. Hartson, Judge.

Action to recover on surety bond. Judgment for plaintiffs. *Affirmed.*

Karl Paine, for Appellants.

The transaction evidenced by exhibit "A," and the state contract made in the pursuance thereof, was a joint adventure of the parties of exhibit "A" and created a *quasi*-partnership relation between them and not the relation of vendor and vendee. (C. S., secs. 5818, 5819; 30 Cyc. 349; *McKeel v. Mercer,* 118 Okl. 66, 246 Pac. 619; *Boles v. Akers,* 116 Okl. 266, 244 Pac. 182; *Perry v. Morrison,* 118 Okl. 212, 247 Pac. 1004.)

Publisher's Note.

5. Agreements to share profits, when do not create partnership, see note in 30 Am. St. 828. Effect of agreement to share profits to create partnership, see note in 18 L. R. A., N. S., 963. See, also, 20 R. C. L. 823.

Partnership, 30 Cyc., p. 369, n. 7, p. 415, n. 28.
Waters, 40 Cyc., p. 827, n. 82.

The measure of damages adopted by the trial court is not applicable to a promise to pay a specified sum of money in real estate or in securities. (*Butcher v. Carlile,* 12 Gratt. (Va.) 520; *Clemmer v. Merriken,* 144 Md. 675, 34 A. L. R. 928, 125 Atl. 394; *Henry v. North American Ry. Const. Co.,* 158 Fed. 79, 81, 85 C. C. A. 409; *Cleveland & Pitts. R. R. Co. v. Kelley,* 5 Ohio St. 180; *Starr v. Light,* 22 Wis. 433, 99 Am. Dec. 55.)

The interpretation of the contract given to it by the trial court converted the provision to pay $39,400 in property into a promise to pay $39,400 in money as liquidated damages for a breach thereof. Such an interpretation is contrary to the policy of the law. (*Alvord v. Banfield,* 85 Or. 49, 166 Pac. 549; *City of El Reno v. Cullinane,* 4 Okl. 457, 46 Pac. 510; *Heatwole v. Gorrell,* 35 Kan. 692, 12 Pac. 135.)

Charles E. Winstead, for Respondents.

The contract exhibit "A" is a contract of sale and not an agreement for a future contract or a contract of partnership. (30 Cyc. 374; 20 R. C. L. 826, 827; 19 L. R. A. N. S., 1013, note.)

The measure of damages for breach of a contract to pay a fixed sum in a particular commodity or specific articles of property, is the sum stated and the value of the commodities at the time of the breach is not material. (17 C. J., 865, 866; Ann. Cas. 1916A, 965, note; *E. I. DuPont etc. Co. v. Schlottman,* 218 Fed. 353, 134 C. C. A. 161; *Marshall v. Ferguson,* 23 Cal. 66; *Cummings v. Dudley,* 60 Cal. 385, 44 Am. Rep. 58; *Beckwith v. Sheldon,* 168 Cal. 742, Ann. Cas. 1916A, 963, 145 Pac. 97.)

The measure of damages for breach of a contract to pay a fixed sum in securities follows the above rule and is the sum stated, and the value of the securities at the time of the breach is immaterial. (*Beckwith v. Sheldon, supra; Irvine v. Postal Tel. Co.,* 37 Cal. App. 60, 173 Pac. 487; *Etienne v. Etienne,* 42 Cal. App. 441, 183 Pac. 689; *Cameron v. Orleans & J. R. Co.* (La.), 32 So. 208; *Cosard v. Bunker,*

2 S. D. 294, 50 N. W. 84; *Grant v. Burleson P. & Co.,* 38 Tex. 214.)

Respondents made out a *prima facie* case when they showed that the appellant, Maney Brothers & Company, had failed to deliver the water contracts when they should have been delivered, entitling them to judgment for the face value of the water contracts with interest from date of default. (34 A. L. R. 934, note; *Henry v. North American Ry. Const. Co.,* 158 Fed. 79, 85 C. C. A. 409; *Sirlott v. Tandy,* 3 Dana (Ky.), 142; *Orange, A. & M. R. Co. v. Placide,* 35 Md. 315.)

BABCOCK, Commissioner.—This action was brought by the respondents on April 17, 1924, to recover from appellants the penalty in a certain bond for $25,000 given to the respondents by the appellants, Maney Brothers & Company, a copartnership, as principal, and the appellant, Fidelity & Deposit Company of Maryland, a corporation, as surety, guaranteeing the performance on the part of the appellant copartnership of certain provisions of a contract made between the respondents and the said copartnership on June 7, 1913.

The contract recites that the respondents agreed to sell and convey to Maney Brothers & Company all their right, title and interest in and to the Jordan Valley Irrigation Project, situated in Malheur county, Oregon.

By subdivision (b) of paragraph 1 respondents agree:

"To accept as full compensation and consideration for the rights and property so to be transferred, conveyed and assigned as aforesaid, the sum of Thirty Nine Thousand Four Hundred Dollars, payable in manner following, to wit:

"$14,400 shall be paid in fully paid water rights at the rate of Thirty Dollars ($30.00) per acre for four hundred eighty (480) acres of land, to be selected by the parties of the first part, which land may be situated under any part of said project as finally located and constructed.

"$25,000 shall be paid in water contracts executed by owners and entrymen of land under said project for the

purchase of water rights for the irrigation of said lands, which water contracts shall be taken at their par or face value, and if said contracts cover patented land or land upon which final proof has been made, they shall be a first lien thereon, and if upon land, the legal title to which still stands in the United States or the State of Oregon, they shall be a prior lien thereon, superior to all other liens and incumbrances, and subject only to the paramount title of the United States or the State of Oregon. Such contracts may be selected by first parties out of the water contracts taken by second party or its assigns.

"And in addition to the aforesaid sums, the first parties shall be entitled to receive twenty per cent (20%) of the net profits derived by second party, or its assigns, from the sale of water rights to lands under said project in excess of Ten Thousand (10,000) acres, and also one-half of the net profits derived from the sale of town lots in any and all townsites situated on said project, and which said party or its assigns may undertake to handle or promote. But in lieu of the aforesaid water contracts, water rights, commissions or interest in the sale of water rights for other lands, and in the sale of town lots, as aforesaid, first parties will accept the sum of Forty Five Thousand Dollars ($45,000) payable in lawful money of the United States, on or before the first day of July, 1914, and upon such payment being made they will give an absolute and full release of all demands of whatsoever kind for any other or further consideration under this agreement, and such payment shall be in lieu of all other considerations herein agreed to be paid."

By subdivision (a) of paragraph 2, Maney Brothers & Company agree, in consideration thereof:

"(a) To pay the consideration hereinbefore stated, in the manner and at the time or times herein provided, and to furnish a surety bond signed by some solvent surety company acceptable to the parties of the first part, in the sum of Twenty Five Thousand Dollars ($25,000) guaranteeing the delivery to first parties of said paid up water rights for the

four hundred eighty (480) acres of land, and of the said water contracts to the amount of Twenty Five Thousand Dollars ($25,000)."

The bond on which the action is brought is dated June 17, 1913, and reads, in part, as follows:

"Now, therefore, if the above bonded principals, their executors, administrators or assigns, shall in all things on their part observe, perform, fulfill and keep all and singular the clauses, conditions and agreements which on the part of said principals, their executors, administrators or assigns, are to be observed, performed, fulfilled and kept, relative to the delivery of said paid-up water rights for four hundred eighty (480) acres of land, and to the delivery of said water contracts to the par value of Twenty Five Thousand Dollars, then this obligation shall be void, otherwise to remain in full force and virtue."

The amended complaint in the action alleges the execution and delivery of the contract, the execution, delivery and acceptance of the bond, the transfer and conveyance by the respondents to Maney Brothers & Company of the property described in the contract, the organization of a Nevada corporation named the Jordan Valley Land & Water Company, on November 21, 1913, the transfer by Maney Brothers & Company of all their property and rights acquired under the contract to such corporation, the making of a contract on June 21, 1918, by the corporation with the state of Oregon for the construction of the project, a further contract with the state of Oregon on May 21, 1921, relative thereto, and the ratification of the same by the corporation on September 10, 1921.

The complaint also alleges that certain construction work was done by the said Nevada corporation, and the taking of water contracts from the owners of lands and entrymen under the project to the amount of $200,000, the designation and selection of the 480 acres of land by the respondents and request for paid-up water rights therefor, as provided in the contract, the designation and demand by the respondents for water contracts in the par or face value

of $25,000, the notice of such designation and demand upon the appellants, and the failure and refusal of appellants to comply with such request; and alleges that by reason of the default on the part of the defendants to deliver such paid-up water rights and water contracts, the guarantee of the defendants, as set forth and evidenced by the said bond, has become due and payable to the respondents, and that they are entitled to recover the said sum of $25,000 provided in said bond as stipulated damages for such failure.

Separate demurrers to the amended complaint were filed by appellants, each of which was overruled. Thereupon, separate answers to the amended complaint were filed by the appellants.

The answer of the appellants, Maney Brothers & Company, admits the copartnership, admits the execution of the contract and bond, admits that the project was not completed so as to make available water rights for the 480 acres of land selected by the respondents, admits that the bond formed a part of the contract and was duly accepted by the respondents, and denies the other material allegations of the complaint.

As a second defense the answer pleads that plaintiff's cause of action, if any, accrued on or before June 7, 1916, and that the same is barred by C. S., sec. 6609.

As a third defense the answer alleges that said appellants received nothing of value for the contract or bond, and that each is wholly without consideration.

As a fourth defense it is alleged that the contract created the relation of copartners between the respondents and the appellant Maney Brothers & Company, or that the undertaking was a joint adventure; alleges the expenditure of a large sum of money for labor and material by Maney Brothers & Company in carrying out the contract and creating the project, and asks that an accounting be had and judgment entered against the respondents for such sum as may be found due from them to the appellant Maney Brothers & Company by reason of such copartnership dealings or such joint adventure.

45 Idaho—47

As a fifth defense the answer alleges that on or about June 7, 1917, respondents and appellants mutually abandoned and rescinded the contract and bond; to which answer the respondents interposed a demurrer and motion to strike, in part, which demurrer and motion were sustained as to the fourth defense therein.

The answer of the appellant Fidelity & Deposit Company admits its incorporation.

And then follows the separate answer of the appellant copartnership, with the exception that it does not attempt to set up the defense designated Defense Number Four in Maney Brothers & Company's answer, it being the defense to which the motion to strike, and demurrer, was sustained by the court.

The case was tried to a jury.

At the beginning of the trial appellants objected to the introduction of any evidence on the part of the respondents, which objection being overruled, evidence was introduced on behalf of the respondents.

Appellants moved separately for judgment of nonsuit which motions were overruled.

Appellants then introduced evidence in their behalf and respondents introduced evidence in rebuttal. And at the close of all the evidence the motions for judgments for nonsuit were renewed, and an additional ground for nonsuit was interposed on behalf of the appellant bonding company, both of which motions were overruled.

The court instructed the jury as to the law of the case, and submitted to them a separate interrogatory at the request of the appellants.

The jury returned a verdict against all of the appellants for the sum of $25,000.

The interrogatory, and the answer thereto of the jury, were as follows: "What length of time, under the evidence. in this case, do you find to be a reasonable time within which to perform the contract of June 7, 1913?" Answer: "Seven years."

Judgment was entered on the verdict of the jury in favor of the respondents and against the appellants for $25,000 and costs; from which judgment the appellant appealed.

To the action of the court in overruling appellant's demurrers to the complaint, in sustaining the demurrer and motion to strike directed at appellant Maney Brothers & Company's fourth defense, in overruling the objection to the introduction of testimony, denying motions for nonsuit, and the giving of certain instructions, the appellants make twenty-seven assignments of error.

These assignments present for determination the validity of the contract, and call for a construction thereof as to whether or not, under the contract, the parties became copartners or the enterprise constituted a joint adventure; the correct measure of damages, and the bar of the statute of limitations; and are covered by the contentions of the appellants hereinafter set out and discussed.

It is first contended by the appellants that the contract in question is void for uncertainty in that it expressly authorizes Maney Brothers & Company, or their assigns, to enter into a contract with the state of Oregon, and bound them to carry out its provisions.

[1] The preamble of the contract recites that the respondents had theretofore filed with the state engineer of the state of Oregon applications for permits to store and appropriate the waters of Jordan Creek, and its tributaries, in Malheur county, Oregon, for the irrigation of the lands in question, and had also filed with the desert land board of the state a proposal in writing for the reclamation of said lands under an act of Congress known as the Carey Act and the laws of the state of Oregon passed pursuant to and in furtherance of said act of Congress, and that said lands had been temporarily withdrawn by the Department of the Interior pursuant to request therefor made by said desert land board, based upon the application or proposal filed with said board by respondents.

The respondents, by the contract, were conveying and transferring to Maney Brothers & Company all their right,

title and interest in and to said irrigation project, and Maney Brothers & Company were to succeed them in carrying out their proposition made to the state of Oregon; it being provided, however, in the contract that should Maney Brothers & Company conclude to follow some other method than the Carey Act for the reclamation of the lands, they were privileged to do so by obtaining the permission of the state engineer of Oregon.

There were no rights reserved or retained by the respondents to control or dictate in any way to Maney Brothers & Company the terms or conditions of the contract with the state of Oregon.

We are unable to see how the contract in question is uncertain or indefinite by reason of these provisions complained of by the appellants. The parties had in view, in incorporating these provisions in the contract, the requirements under the laws of the state of Oregon for the reclamation of the Carey Act lands which were definite and certain.

[2] Appellants' next contention is that subdivision "b" of paragraph 1 of the contract is unenforceable owing to the noncompletion of the project. This paragraph of the contract provides that the respondents are to accept as full compensation and consideration for the rights and property to be transferred to Maney Brothers & Company the sum of $39,400, which shall be paid, $14,000 in paid-up water rights for 480 acres of land, and water contracts to the amount of $25,000.

It will be observed that the bond upon which suit is brought is not conditioned upon the condition of the irrigation system, but that the principal in said bond, Maney Brothers & Company, shall keep all and singular the clauses, conditions and agreements on their part to be kept and performed in said contract relative to the delivery of the water rights above referred to.

No time is fixed in the contract for the completion of the irrigation system by Maney Brothers & Company, nor for the delivery of the water rights and water contracts; and they would, therefore, have a reasonable time within which

to complete the system and deliver such water rights and contracts, and they should not be permitted to excuse themselves from their obligations by their own failure and neglect to complete the system so as to enable them to comply with the provisions of the bond as to the delivery of the paid-up water rights and water contracts.

To so hold would mean that their failure ever to complete the system would absolutely absolve the appellants from any obligation under the bond, which, manifestly, could not have been the intention of the parties.

[3] It is next contended by the appellants that the correct measure of damages, if any, is the actual damage sustained by respondents by the failure of Maney Brothers & Company to deliver to them the water rights and contracts provided in the contract, for the reason that the contract provides for the measure of damages and contains no liquidated damage clause. It is not disputed but that the respondents complied with their contract and that the same has been fully performed on their part; nor that the appellant Maney Brothers & Company have failed to perform their part of the contract in delivering the water rights and water contracts when demanded by the respondents, thereby causing a breach of the conditions of the bond upon which the suit was brought.

Under the contract of sale it is apparent that Maney Brothers were to construct the irrigation project. The purchase price to be paid was optional, either $39,400 to be paid by $14,000 in water rights and $25,000 in water contracts and a certain percentage of the profits to be derived from the sale of the water during and after the construction of the irrigation project, or Maney Brothers could, on or before July 1, 1914, pay in full settlement $45,000 in cash.

The $45,000 in cash was not paid.

A bond for $25,000 was given to insure the performance of the contract with regard to the $39,400 only. Paragraph 3, subdivision c, of the contract provided that upon default of Maney Brothers and failure to correct same upon thirty

days' notice, Maney Brothers should reconvey or pay whatever damages Palmer and Parks had sustained.

Many cases have been cited by both parties *pro* and *con* as to when a contract for the delivery of specified goods or the payment of a certain amount of money by the delivery of securities or articles of merchandise will, on the one hand, amount to a stipulation of liquidated damages, or, on the other, authorize unliquidated damages which require proof of their amount. The following facts show that these cases are not controlling herein. In addition to the above agreement of the parties that the minimum price to be paid was $39,400 there is this added feature, that here the value of the water rights and the water contracts depended on what Maney Brothers would do. Maney Brothers, having failed or neglected to construct the irrigation system, they say these securities are of no value and, therefore, their transfer would be meaningless and useless, and they argue therefrom that the contract contemplated unliquidated damages and urge that Palmer and Parks must prove their damages.

This does not follow for two reasons:

1. They may not take advantage of their own neglect and nonperformance to absolve themselves from the payment of the purchase price. *Cameron v. Orleans,* 108 La. 83, 32 So. 208, at 215, holds:

"Plaintiffs' contract contemplated that they should be paid half cash and half in the bonds of the Orleans Company at their market value, and that from the proportion due in bonds there should be deducted the bills for freight, which was to be paid by the construction company. This arrangement was predicated upon the assumption that the construction company would do the work necessary to entitle it to the bonds and to give those bonds a market value; and as the construction company has failed in that respect through no fault of the plaintiffs, the latter, we think, are entitled to a judgment in money based upon the contract price of the goods actually delivered by them, less the freight charges paid by the construction company."

2. They themselves, by their agreement, fixed and determined the value of the water rights purchased by them at a minimum of $39,400, which, together with the bond given to secure the payment thereof, constituted, in effect, the fixing of the price to be paid and hence liquidated the damages which Palmer and Parks would suffer if Maney Brothers & Company failed to perform. Of course, the bonding company would be liable for no more than the amount of the bond, and since the amount of the bond was less than the amount specified as a minimum purchase price, Palmer and Parks would be entitled to at least that much of the judgment.

*Beckwith v. Sheldon,* 168 Cal. 742, Ann. Cas. 1916A, 963, 145 Pac. 97, where the facts were almost identical with those herein, amply justifies this conclusion in the following words:

"Looking to the terms of the agreement, it is easily seen that it is not a mere agreement for the delivery of the bonds. The promise is 'that there shall be paid to' Beckwith 'the sum of fifty thousand dollars.' This is not an agreement to sell or deliver bonds but a promise to pay money. The addition of the words 'in bonds of the . . . . company at par' does not change it into an agreement solely for the delivery of the bonds, but merely gives the payer the option or privilege of making such payment by delivering the bonds as specified when the time of performance arrived. The defendant, Central Canal and Irrigation Company, having received the consideration furnished to the enterprise by Beckwith, and having undertaken to perform the obligation to him set forth in the agreement, was bound thereby to the same extent as if it had been a party thereto. When it thereupon refused to perform the obligation, the promise became an absolute money obligation and the value of the bonds was immaterial, or, at all events, the payment in money became immediately due (*Brown v. Foster,* 51 Pa. 173), and the payee could sue thereon as upon a money obligation and recover without alleging or proving the value of the bonds. Much more is its char-

acter as a money obligation apparent when the nature of the thing to be substituted for money in payment is considered. The Company was to deliver its own bonds for fifty thousand dollars its promises to pay that sum, in satifaction of the amount which Beckwith was to receive in settlement. Its debt would remain the same; the only advantage to it would be that the time of payment would be postponed. For these reasons we are of the opinion that the omission of a finding of the value of the bonds is immaterial.''

While it is true that subdivision c of paragraph 3 of the contract provides that in case Maney Brothers & Company should default in any of the covenants contained in the contract, and fail to correct such default on thirty days' notice from the respondents so to do, they should convey to respondents all rights which they might have acquired in and to said project, or. in lieu thereof, pay in cash the damages which the respondents may have sustained by reason of such default, we are of the opinion that this provision should be construed as a cumulative remedy, and, in any event, it in no way detracts from the conclusion that the parties had fixed a minimum price of $39,400.

The instant case is easily distinguishable from *Clemmer v. Merriken,* 144 Md. 675, 34 A. L. R. 928, 125 Atl. 394, and other similar authorities, for the reason that herein Maney Brothers agreed to pay a certain amount as the purchase price of certain property. They had the option of paying therefor, in part, with $25,000 of water contracts and $14,000 of water rights. It was contemplated by both parties that the cash purchase price was $45,000 and Maney Brothers to do certain things which would make the securities to be given in lieu of money of value. When they failed to deliver the water contracts, the bond required the payment of at least $25,000 of the purchase price, if the project had been completed, water rights to the amount of $14,000 and water contracts in the amount of $25,000 would have satisfied $39,400 of the debt; but since the project was not completed by Maney Brothers, the bond still guaranteed $25,000 of the purchase price. If this is

not the construction to be placed on the bond, the bond is meaningless because it is evident that the parties meant to give Palmer and Parks absolute security for at least $25,000 of the purchase price. This does not mean, nor do we conclude, that the bond was given to insure the completion of the project; it was to insure either that the project would be completed and water contracts and rights of value delivered, or that amount of dollars paid; in other words, it made certain the payment of $25,000 of the purchase price.

It is also contended that the contract created the relation of copartners between the respondents and the appellants, Maney Brothers & Company, or that the undertaking was a joint adventure.

The contract provides that the respondents were to convey to Maney Brothers & Company the property in question, of the agreed value of $39,400, and were to be paid therefor in water rights and water contracts whether the project was profitable or not. Whether they received anything in addition thereto was contingent upon the success of the enterprise and the sale of town lots and the irrigation of lands in excess of 10,000 acres.

The bond was given to secure the delivery of the water rights and contracts.

[4, 5] Respondents assumed none of the burdens and were in no way responsible for the construction of the irrigation system. They had no voice in the management and no control, in any way, over Maney Brothers & Company in carrying on the work; as far as they were concerned, the enterprise was that of Maney Brothers & Company and theirs alone. The mere agreement to share in the profits of itself constitutes neither a partnership nor a joint adventure; there must be other facts showing that relationship to have been the intent of the parties, or such as to estop a denial of it as against third parties. (*Keyes v. Nims,* 43 Cal. App. 1, 184 Pac. 695; *National Surety Co. v. Winslow,* 143 Minn. 66, 173 N. W. 181, at 183; *Peirce v. McDonald,*

168 App. Div. 47, 153 N. Y. Supp. 810; *Griffiths v. Von Herberg*, 99 Wash. 235, 169 Pac. 587.)

We therefore conclude that the contract was not so indefinite and uncertain as to be unenforceable, that the trial court did not err in any of its rulings complained of by the appellants, nor in its instructions to the jury to the effect that the contract fixed the sum of $39,400 as liquidated damages, and that the bond guaranteed the payment thereof to the amount of $25,000; and the jury having found, on conflicting evidence, that the statute of limitations had not run, we recommend that the judgment should be affirmed, with costs to the respondents.

Adair, C., concurs.

The foregoing is approved as the opinion of the court, The judgment is affirmed. Costs to respondents.

Wm. E. Lee, C. J., and Givens and T. Bailey Lee, JJ. concur.

Petition for rehearing denied.