In re MISSION FARMS DAIRY.

KING v. RIVERSIDE ALFALFA GROWERS' ASS'N, Inc., et al.

No. 6604.

Circuit Court of Appeals, Ninth Circuit.

Feb. 23, 1932.

Neil S. McCarthy, Earl L. Banta, and Howard P. Hall, all of Los Angeles, Cal., for appellant.

Francis D. Adams and Robert Clifton, both of Hollywood, Cal., for appellees.

Before WILBUR and SAWTELLE, Circuit Judges.

WILBUR, Circuit Judge.

This appeal is taken from an order adjudging bankrupt a partnership composed of A. G. King, Axel H. Hultgren, and Eleanor Hultgren, doing business under the name Mission Farms Dairy. The sole question presented by the appeal is whether or not A. G. King is a member of the alleged copartnership. The District Court having determined that he was a member of the partnership, he brings this appeal. The agreement between the alleged copartners was in writing and the question of whether or not A. G. King was a member of the copartnership depends almost entirely upon the legal effect of the written agreement under the provisions of the Uniform Partnership Law of California (Cal. Civ. Code, § 2400 et seq.), adopted in August, 1929.

Axel H. Hultgren and wife conducted a dairy business under the name Mission Farms Dairy. It appears from the terms of the written instrument that the appellant, A. G. King, had advanced $7,400 to Hultgren and wife with which to purchase land, cattle, and equipment for the purpose of establishing a dairy at San Clemente, Cal.; that the property so purchased was to be the property of the appellant, although title thereto was to be taken in the name of Hultgren and wife in trust for the appellant, to be assigned to him upon demand. Hultgren and wife were to be given the right and privilege of purchasing a 49 per cent. interest therein; they were to have the possession and use of the real estate, cattle, and personal property for the purpose of conducting and operating a dairy business; and were authorized to retain from the receipts of the business $150 per month "in full for all services rendered" by them. All profits over and above operating expenses, deferred installments upon the purchase price of property, and the aforesaid salary, were to be paid to appellant King until he had received $7,400, with interest thereon at the rate of 6 per cent. per annum. When said amount with interest had thus been paid, King was to transfer to Hultgren and wife a 49 per cent. interest in all the property purchased and used as aforesaid. The appellant agreed that, after the entire amount due him had thus been paid, he would not sell his 51 per cent. interest "in said business or any part thereof to any person without first giving" Hultgren and wife the right to dispose of their 49 per cent. interest at the same rate. It was agreed that, if payments were not made from the receipts of the business as required by the agreement, appellant, King, could terminate the agreement, retain the title to all the property, and take possession thereof, to the exclusion of Hultgren and wife; that the salary payable to Hultgren and wife was to be paid from the receipts of the business, and not otherwise; and that appellant was under no obligation to pay the same. Hultgren and wife were to keep accurate books of account which should be subject to inspection by the appellant. It is further provided that:

"This agreement shall not be deemed a partnership between the parties, nor are the parties to be copartners herein. Second parties and each of them are not authorized to represent or do any act or thing for or on behalf of first party, or as his agent or partner, or otherwise, and first party is not authorized to represent or do or perform any act or thing, as agent or co-partner of second parties or either of them."

An addenda to the contract signed by appellant alone is as follows: "In case the property is sold the net profits are to be divided equally between both parties." Promissory notes were given by Hultgren and wife to appellant King for the $7,400 and interest, and for all subsequent advancements.

348

The rule is that the intention of the parties with reference to the formation of a copartnership is controlling as to their rights and obligations, unless the parties are bound by reason of the ostensible relation assumed by them. There is no claim here of an ostensible partnership, for the relationship of King to the business was unknown to the creditors until long after they had extended credit to the Mission Farms Dairy. It is also true, however, that the mere declaration in the agreement that the relationship established is not that of a copartnership is not controlling, if the agreement actually establishes a partnership relationship. Sparks v. Kuss, 195 Wis. 378, 216 N. W. 929, 218 N. W. 208. As between the parties, it is clear that it was considered that the money invested by the appellant was a loan from appellant to Hultgren and wife. The promissory note executed by them to appellant can be explained on no other hypothesis. The title to the property, although taken in the name of Hultgren and wife, was to be held by them in trust for the appellant pending the payment of the promissory note from the profits of the business. There was no agreement for any division of the profits of the business until the note was paid, when the property as an entirety was to be treated as a profit from the conduct of the business to be divided in the ratio of 51 to 49 per cent. If, however, a sale of the property was made before the consummation of the agreement, the net profits were to be divided equally.

By that we understand that, if there were any sum remaining after the payment of all the debts and the obligations incurred in operating the business and the payment to Hultgren and wife of $150 per month and to appellant of the amount of the indebtedness due him, or moneys advanced by him, that amount would be equally divided, notwithstanding the fact that the principal and interest due appellant was paid from the proceeds of the sale of the business instead of from the profits accruing therefrom. That there is an agreement here for the division of profits is clear. This division was to occur when appellant had been completely repaid the amount of his investment evidenced by the promissory notes of Hultgren and wife either from profits of the business or from the proceeds of a sale of the business. The question then is, Did this agreement to divide the profits in such fashion ipso facto constitute a copartnership? Appellant relies upon the case of San Joaquin Light & Power Co. v. Costaloupes, 96 Cal. App. 322, 274 P. 84, by the District Court of Appeals of the First District in California. That decision, however, was rendered before the adoption of the Uniform Partnership Law by the Legislature of California. That case differed from the case at bar, for the reason that in that case the party sought to be charged as a copartner had actually participated in the management of the cheese manufacturing business by taking the entire product of the plant and selling the same for the mutual advantage of himself and those alleged to be his copartners, and by participating in the management of the manufactory itself by employing and paying an agent to represent him there. We therefore turn to the provisions of the Uniform Partnership Law for the purpose of determining whether or not a partnership was created under the law of California. It is provided (Cal. Civ. Code, § 2401, subd. 3) that the sharing of gross returns does not of itself establish a partnership whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived. Section 2401, subd. 4, Cal. Civ. Code, provides:

"The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment: (a) As a debt by installments or otherwise. (b) As wages of an employee or rent to a landlord. * * * (d) As interest on a loan, though the amount of payment vary with the profits of the business. (e) As the consideration for the sale of the goodwill of the business or other property by installments or otherwise."

If it be conceded, as we think it must be, that the basic relation between the appellant and Hultgren was that of debtor and creditor, and that the payments received by appellant from the proceeds of the business were payments of that debt, then under the express terms of the Uniform Partnership Law, § 2401, Cal. Civ. Code, subd. 4, (a) the fact that such payment was made from the profits of the business did not constitute them copartners. Nor does the payment of interest on the loan from profits of the business constitute them copartners. Id. subdivision d. If, on the other hand, we treat the agreement as one by which the Hultgrens were entitled to purchase a 49 per cent. interest in the property which was declared to be the purpose of the contract by the following phrase thereof, "and the second parties were to be given the right and privilege of purchasing a 49 per cent. interest

therein," then the payment of such purchase price from the profits of the business would not constitute them copartners. Cal. Civ. Code, § 2401, subd. 4, (e).

Until the consummation of the agreement by the payment to the appellant of the entire indebtedness due him, the parties agreed to treat such payments as a credit to be applied by the appellant upon the indebtedness due him as evidenced by the promissory notes executed as aforesaid. It was only upon the completion of that payment that the property was to be divided. The agreement was one to form a future partnership. We think this is established by the express terms of the Uniform Partnership Law, and is clearly recognized by the decisions of the courts based thereon, next to be considered.

The state of Pennsylvania has adopted the Uniform Partnership Law, and the Supreme Court of that state, in Coens v. Marousis, 275 Pa. 478, 119 A. 549, 550, had to deal with a somewhat similar situation. In that case the title to the business was in the capitalist. An employee was secured who was to manage the business under an agreement that, after the cost of the original investment and maintenance of the employee were repaid from the receipts of the business, he was to receive a half interest in the business. The court there said: "Whether a partnership existed must be found from the terms of the agreement. A partnership relation may be created where one gives money or effects and the other labor or skill, under an agreement for a proportionate division of profits and losses (Purviance v. McClintee, 6 Serg. & R. 259, 261; Gregg Twp. v. Half Moon Twp., 2 Watts, 342, 343; Bradly v. Jennings, 201 Pa. 473, 474, 51 A. 343; Gibbs' Estate, 157 Pa. 59, 70, 27 A. 383, 22 L. R. A. 276); but, where the agreement contemplates the formation of a partnership at some future time, as in this case, and the entire capital is contributed by one of the parties, the other furnishing his services free until such time as the former is reimbursed from the profits, when the latter is to be given an interest in the business, it is evident no partnership is intended until these events occur. Persons who have entered into a contract to become partners at some future time, or upon the happening of some future contingency, do not become partners until the agreed time has arrived, or the contingency has happened."

The Circuit Court of Appeals of the Seventh Circuit had under consideration the effect of the Uniform Partnership Law in Re Marcuse & Co., 281 F. 928, 940. The question under consideration was the effect of the Uniform Partnership Law on the relationship of persons claiming to be partners. Judge Alschuler, speaking for the court, said:

"The act manifests a definite purpose of making paramount the contractual intent of the parties to the agreement, as a test for fixing a general partnership liability rather than, as often theretofore, by way of penalization for participation in profits, or doing other things which held parties to general partnership liability, when general partnership was not contemplated or intended, and was not in fact effected as between themselves.

"With the wisdom of such change in policy as is manifested by the Uniform Partnership Acts we are not of necessity here concerned. There is reason for each view; but we are not at liberty to reject the test which the statute fixes. If experience shows the statutory test to be impractical and unwise, the remedy is with the Legislature alone. The record discloses no such situation as would suggest that the application here of that test involves hardship or inequity toward the creditors generally. It shows nothing to indicate that creditors were beguiled into extending credit to the firm on the faith that the petitioners (particularly the others than Hecht and Finn) were general partners, nor that petitioners held themselves out as such partners, or did any other of those things which, under section 16 of the act, might entail upon them general partnership liability."

The Supreme Court later reviewed this decision in Giles v. Vette, 263 U. S. 553, 559, 44 S. Ct. 157, 159, 68 L. Ed. 441. It is there said:

"It is well settled in Illinois that, as between the parties, the question of partnership is one of intention, to be gathered from the facts and circumstances. [Citing cases.] The Uniform (General) Partnership Act provides: 'A partnership is an association of two or more persons to carry on as co-owners a business for profit.' Section 6 (1). ' * * * Persons who are not partners as to each other are not partners as to third persons.' Section 7 (1). ' * * * Common property or part ownership does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of the property.' Section 7 (2). 'The receipt by a person of a share of the profits of a business is prima

facie evidence that he is a partner in the business. * * *' Section 7 (4).

"Hecht and Finn did not carry on the business of the firm as co-owners or otherwise. They had no authority, actual or apparent, to act for or bind the copartnership. The agreements of the parties, their subsequent conduct, the repayment of dividends received, with interest, together with the other facts and circumstances above alluded to, are more than sufficient to rebut and overcome any inference legitimately resulting from the receipt of a share of the profits. The provisions of the agreement giving respondents right to have access to the books of the firm, to have statements, to appoint auditors, and, in the events specified, to call for a dissolution, were appropriate in a limited partnership. See section 19, Act of 1874; § 10, Uniform Limited Partnership Act. Under the circumstances, these provisions do not indicate any intent on the part of Hecht and Finn to become general partners or support petitioners' contention that they are liable as partners.

"As to third parties, they cannot be held liable as general partners."

In Palmer v. Maney, 45 Idaho, 731, 266 P. 424, 428, the Supreme Court of Idaho had under consideration a contract wherein a party sold the Jordan Valley Irrigation project for $39,400 payable in water rights, water contracts, and profits from the enterprise. It was held that this agreement did not constitute a copartnership under the Uniform Partnership Law (Idaho Laws 1919, c. 151, Comp. St. 1919, §§ 5782, 5812). The court there stated: "Respondents assumed none of the burdens and were in no way responsible for the construction of the irrigation system. They had no voice in the management and no control, in any way, over Maney Bros. & Co. in carrying on the work; as far as they were concerned, the enterprise was that of Maney Bros. & Co., and theirs alone. The mere agreement to share in the profits, of itself, constitutes neither a partnership nor a joint adventure; there must be other facts showing that relationship to have been the intent of the parties, or such as to estop a denial of it as against third parties. Keyes v. Nims, 43 Cal. App. 1, 184 P. 695; National Surety Co. v. Winslow, 143 Minn. 66, 173 N. W. 181, at p. 183; Peirce v. McDonald, 168 App. Div. 47, 153 N. Y. S. 810; Griffiths v. Von Herberg, 99 Wash. 235, 169 P. 587."

The Supreme Court of Michigan in Morrison v. Meister, 212 Mich. 516, 180 N. W. 395, 396, where a lot owner and a building contractor agreed to construct a house on the lot, sell the same, and divide the profits, said:

"The record is convincing that there was no intention on the part of the defendant to form a partnership. Very few of the indicia of partnerships were present, and most of them were absent. This was the only property they had a common interest in; there was no firm name, no firm funds, no firm accounts, no firm letter heads, no firm bank account, no commingling of funds or property, no certificate of partnership filed, no agreement as to losses, no time fixed when it would expire. * * *

"See, also, Bush v. Haire, 197 Mich. 85, 163 N. W. 875; Fletcher v. Fletcher, 197 Mich. 68, 163 N. W. 488; Pulford v. Morton, 62 Mich. 25, 28 N. W. 716; Wells v. Babcock, 56 Mich. 276, 22 N. W. 809, 27 N. W. 575; Miller v. Casey, 176 Mich. 221, 142 N. W. 589; subdivision 2 of section 7, Act 72, Public Acts 1917 (Uniform Partnership Act)."

The receipt of wages by Hultgren and wife from the profits did not constitute the parties partners under the express terms of the Uniform Partnership Law (Cal. Civ. Code, § 2401, subd. 4, (b), supra). For application of this provision see Winters v. Miller, 227 Mich. 602, 199 N. W. 642; Klein v. Kirschbaum, 240 Mich. 368, 215 N. W. 289. There was no community of interest in the profits over and above the amount due King and the wages due Hultgren until the debt to King was fully paid or the arrangement terminated by a sale which would of itself terminate the business.

It follows, we think, that, although both parties had a contingent interest in the profits over and above the amount advanced or loaned by King and over the amount paid as wages to Hultgren and wife, that fact alone did not constitute them partners. There was no evidence of management or control of the business by the appellant. He consistently assumed the position of a creditor. Whether appellant was liable for debts contracted in feeding and caring for his stock or otherwise is a point not involved on this appeal and not considered or determined by us. There was no partnership.

The order adjudicating bankruptcy is reversed in so far as it affects appellant.